Gerald J. OSHER, et al., Plaintiffs,

v.

SCA REALTY I, INC., et al., Defendants.

Civil Action No. 95–01816 CRR.

United States District Court, District of Columbia.

Nov. 12, 1996.

Herbert Beigel, and Ronald A. Schy, Beigel Schy & White, Los Angeles, CA, for Plaintiffs.

E. Alex Blanton, Dyer, Ellis & Joseph, Washington, D.C. and A. Robert Pietrzak, Brown & Wood, New York City, for Defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

The above-entitled case is a class and derivative action filed in the District of Columbia Superior Court on July 24, 1995, and removed to this Court on September 21, 1995. Plaintiff Dr. Gerald J. Osher brought the action, individually and on behalf of all other similarly situated, and the SCA Tax Exempt Fund Limited Partnership brought the action, derivatively through Dr. Osher. The named plaintiff alleges that the defendants violated their partnership agreement and fiduciary duties by undertaking a certain refunding and financing transaction in early 1995. On June 12, 1996, the parties entered into the Second Amended Stipulation and Agreement of Compromise and Settlement, providing for the full and final settlement of the case on the terms and conditions set forth therein. The Court is given the responsibility under Rule 23(e) of the Federal Rules of Civil Procedure to approve or reject the settlement. It is pursuant to that responsibility that the Court acts today.

Upon consideration of the Second Amended Stipulation and Agreement of Compromise and Settlement, all other pleadings by the parties, the entire record herein, the law applicable thereto, and for the reasons set forth below, the Court shall approve said Stipulation and Agreement, award Class and Derivative Counsel attorneys' fees in the amount of $132,631.25 and reimbursement of expenses in the amount of $38,780.17.

### BACKGROUND

#### I. SUMMARY OF THE ACTION

The SCA Tax Exempt Fund Limited Partnership (the "Partnership") was organized in 1986 for the purpose of acquiring a portfolio of tax-exempt mortgage revenue bonds that various state or local governments or their agencies or authorities had or would issue. The Partnership had a public offering of beneficial assignee certificates ("BACs"), which represent limited partnership interests in the Partnership. The portfolio of Bonds that the Partnership owns is made up of two distinct pools of investments ("Series I" and "Series II"). The holders of Series I BACs have an interest in Series I investments and the holders of Series II BACs have an interest in Series II investments.

The plaintiff's claims arise from a financing transaction undertaken by the Partnership in early 1995. In February, 1995, the Partnership consummated a refunding of eleven (11) of the twenty-three (23) Bonds owned by the Partnership in Series I and Series II (the "Refunding"). Pursuant to that transaction, Series A and Series B Bonds (whose aggregate principal amount equaled that of the original eleven (11) Bonds) were exchanged for each of the original Bonds. Each Series B Bond was subordinated to the related issue of Series A Bonds. Also, in February, 1995, the Partnership consummated a financing transaction (the "Financing") in which additional proceeds were raised by the Partnership through the offering of $67,700,000 in aggregate principal amount of Multifamily Mortgage Revenue Receipts in the Series A Bonds.

The plaintiff essentially claims that the defendants (the General Partners of the Partnership) undertook the Refunding and Financing without proper authority and in violation of the Amended and Restated Agreement of Limited Partnership for the Partnership, date June 3, 1986 (the "Partnership Agreement"). The Complaint also alleges that the Partnership Agreement requires the defendants to distribute to the BAC Holders the proceeds of the Financing and that they have failed to do so, and that the defendants failed to inform the BAC Holders of their right to the proceeds in recent public filings and in correspondence with the BAC Holders. The Complaint alleges claims on behalf of the plaintiff and, putatively, on behalf of the other BAC Holders for breach of the Partnership Agreement and of the defendants' alleged fiduciary duties (the "Class Claims") and seeks, *inter alia,* an accounting of the Financing, the immediate distribution of the Financing proceeds, compensatory and punitive damages, attorney's fees and pre- and post-judgment interest. The Complaint also alleges a derivative claim on behalf of the Partnership based on the allegations regarding the defendants' breach of fiduciary duties relating to the Financing (the "Derivative Claim").

On December 15, 1995, the plaintiff filed an amended complaint (the "Amended Complaint"), alleging, in addition to the Class Claims and Derivative Claim asserted in the original Complaint, that a consent solicitation statement—which was to be distributed to BAC Holders in connection with the restructuring of the Partnership—contained material misrepresentations and omissions regarding BAC Holders' rights relating to, and the General Partners' authority to consummate, the Financing. Based on these allegations, plaintiff Osher asserts a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, seeking injunctive relief against the dissemination of the solicitation statement.

Shortly after this action was commenced in July, 1995, the General Partners undertook a transaction involving the restructuring of the Partnership into a Delaware limited liability company (the "LLC"), whereby BAC Hold- ers would be given shares in the newly formed LLC in exchange for their Units in the Partnership (the "Transaction").

Beginning in September, 1995, Class and Derivative Counsel and counsel for the defendants commenced negotiations to resolve the Action, and, on November 8, 1995, the parties agreed to a settlement of the Action in consideration of certain modifications to the terms of and disclosure with respect to the Transaction, as set forth in a Stipulation and Agreement of Compromise and Settlement filed with the Court (the "Stipulation"). The settlement was conditioned on, among other things, the consummation of the Transaction.

On May 29, 1996, the Securities and Exchange Commission issued an Order pursuant to Section 8(a) of the Securities Act of 1933, as amended, declaring effective the registration statement containing the Consent Solicitation Statement in connection with the Transaction. On June 7, 1996, the parties to this action executed an Amended Stipulation and Agreement of Compromise and Settlement to reflect changes in the Transaction since the execution of the Stipulation. On June 12, 1996, the parties executed the Second Amended Stipulation and Agreement of Compromise and Settlement (the "Second Amended Stipulation") to reflect that the Record Date of the Transaction was June 1, 1996.

On June 20, 1996, this Court entered an Order that, *inter alia:* (1) certified this action as a class action and as a derivative action on behalf of the Partnership, conditionally upon final approval of the Settlement; (2) conditionally and preliminarily approved the plaintiff's counsel, Beigel Schy & White, as counsel for the plaintiff class (the "Settlement Class") and, derivatively, the Partnership; and (3) conditionally approved the form of the Notice of Class and Derivative Action Determination, Settlement and Hearing on Proposed Settlement (the "Notice") as well as the form of the Summary Notice. Pursuant to the Preliminary Order, the Notice was sent to the Settlement Class by first-class mail on or before July 2, 1996, and the Summary Notice was published in the National Edition of *The Wall Street*

*Journal* on July 12, 1996. The Court held a final fairness hearing on the proposed settlement on August 29, 1996.

## II. SUMMARY OF THE TRANSACTION AND PROPOSED SETTLEMENT

The proposed settlement provides that those BAC Holders who prefer to retain an investment under terms and conditions comparable to his or her investment in BACs prior to the 1995 Financing and as if the Financing had not occurred can elect to receive "Preferred Shares" in the LLC. Those BAC Holders who prefer to retain an investment substantially similar to his or her investment in BACs recognizing that the 1995 Financing did occur and would like a current capital distribution based on the proceeds received in the Financing can elect to receive "Preferred Capital Distribution Shares" in the LLC. Finally, those BAC Holders seeking a more aggressive investment in the Partnership can elect to receive "Growth Shares" in the LLC.

Upon the approval of BAC Holders holding a majority in interest in the outstanding BACs in each of Series I and Series II, each series voting as a separate class, the Partnership (both Series I and Series II) will merge into the LLC, the Partnership will cease to exist, the LLC will be the surviving company, and each BAC Holder will receive all Growth Shares, all Preferred Shares, all Preferred Capital Distribution Shares, or a combination of Growth Shares and either Preferred Shares or Preferred Capital Distribution Shares.

## DISCUSSION

## I. THE COURT SHALL CERTIFY THE SETTLEMENT CLASS PURSUANT TO FED.R.CIV.P. 23.

■ Before a court can approve a settlement in a class action, it must at some point "definitively certify the class and satisfy [itself] that the requisites of Rule 23 have been satisfied." *In re General Motors Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 797, 800 (3d Cir.), *cert. denied sub nom. General Motors Corp. v. French,* — U.S. —, 116 S.Ct. 88, 133

L.Ed.2d 45 (1995). The Rule 23 standards for a settlement class are no less rigorous than a class certified for litigation. *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 624–25 (3d Cir.), *cert. granted sub nom. Amchem Products, Inc. v. George Windsor,* — U.S. —, 117 S.Ct. 379, 136 L.Ed.2d 297 (1996); *In re General Motors,* 55 F.3d at 799. Accordingly, the Court must examine the class to determine if it meets the criteria for certification under Rule 23. If it does not, the Court will not approve the proposed settlement.

To be certified, (1) a class must be so numerous that joinder of all members is impracticable, (2) there must be questions of law or fact common to the class, (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and (4) the representative parties must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *see, e.g., Hammon v. Barry,* 752 F.Supp. 1087, 1098–99 (D.D.C.1990). The conditionally certified Settlement Class in this litigation meets all four criteria, and, therefore, shall be definitively certified for settlement purposes.

### A. The Class is Sufficiently Numerous; There are Common Issues of Law and Fact; and the Plaintiff's Claims are Typical of the Class'.

The numerosity requirement is unquestionably satisfied as there are over 14,000 individuals in the Settlement Class. *See Steiner v. Equimark Corp.,* 96 F.R.D. 603, 608 (W.D.Pa.1983) (numerosity requirement satisfied in securities fraud suit, when more than 4,000,000 shares of the stock in question were issued and outstanding during the class period, and those outstanding shares were owned by approximately 14,000 shareholders). The Class also meets the requirement that there are common issues of law and fact with respect to the various Class members. All the Class members stand in the same position in this litigation—they all were holders of Series I or Series II BACs in the SCA Tax Exempt Limited Partnership. Consequently, their rights, whatever they may be, should be identical as to each Series and

nearly identical between the two Series. *See Kornick v. Talley*, 86 F.R.D. 715, 720 (N.D.Ga.1980) (allegations of a common course of conduct by corporate officers to defraud investors and the omission of material facts from financial statements were sufficient to satisfy the commonality requirement of the class action rule for an action on behalf of shareholders).

Because the Class members stand in identical or nearly identical positions with respect to the Partnership, the claims and defenses of the Class representative are typical of the Class as a whole. *See also Koenig v. Smith*, 88 F.R.D. 604, 607 (E.D.N.Y.1980) (plaintiff's sophistication as investor did not render his claim atypical of claims of other purchasers of common stock of corporation).

**B. Class Counsel Adequately Represents the Interests of the Class.**

■ By virtue of the numerous options the settlement provides to Class members, the Court, on the whole, is confident that Class and Derivative Counsel can represent the interests of all Class members. Nonetheless, the investment choices made by Class members pursuant to the proposed settlement and the Transaction do not support Class and Derivative Counsel's contention that the named plaintiff's interests are sufficiently aligned with the absentees. *See Block v. First Blood Associates*, 691 F.Supp. 685, 695–96 (S.D.N.Y.1988) (purchaser of limited partnership unit was not entitled to certification of class of all unit purchasers absent showing of sufficient identity of interest).

Class members affirmatively exercised their option to choose which investment they would hold pursuant to the terms of the proposed settlement with respect to only 190,000 of the approximately 300,000 outstanding BACs. Of those 190,000 BACs, holders of only thirteen percent (13%), or approximately 16,900, of the Series I BACs, and twelve percent (12%), or 7,440, of the Series II BACs chose Preferred Capital Shares—the only option that provided an investment under terms and conditions comparable to his or her investment in BACs prior to the 1995 Financing, and as if the Financing had not occurred. *See* Plaintiff's

Consolidated Memorandum in Support of Final Approval of Proposed Settlement and an Award of Attorneys' Fees and Reimbursement of Expenses at 9 ("Plaintiff's Consolidated Memorandum"). Consequently, holders of only eight percent, or approximately 24,000, of the 300,000 total BACs held by Class members affirmatively sought a return to the status quo prior to the Financing challenged in this action.

With respect to those same 190,000 BACs, holders of only two percent (2%), or approximately 2,600, of the Series I BACs, and six percent (6%), or approximately 3,700, of the Series II BACs chose Preferred Capital Distribution Shares—the option under the proposed settlement that provides Class members an investment under terms and conditions comparable to his or her investment in BACs after the Financing, but as if the proceeds thereof were distributed to the BAC Holders. *Id.* Consequently, holders of only two percent, or approximately 6,300, of the 300,000 total BACs held by Class members affirmatively sought a remedy for the alleged failure to distribute the Financing proceeds.

These choices by Class members are hardly overwhelming endorsements of Class and Derivative Counsel's lawsuit seeking to challenge the propriety of the 1995 Financing. Nonetheless, because Class and Derivative Counsel have obtained for the Class members three distinct investment options, which appear to protect the interests of all Class members, the Court shall find that Class Counsel meets the adequacy of representation requirement of Rule 23. Having met all four criteria for certification under Rule 23, the Court shall certify the Class for the purpose of settlement.

**II. THE COURT APPROVES THE PROPOSED SETTLEMENT BECAUSE IT FINDS THAT THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.**

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of any class action settlement:

A class action shall not be dismissed or compromised without the approval of the

court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs.

Fed.R.Civ.P. 23(e). The approval of a proposed settlement to a class action lies within the sound discretion of the court. *See In re Flight Transportation Corp. Secs. Litigation,* 730 F.2d 1128, 1135 (8th Cir.1984), *cert. denied sub nom. Reavis & McGrath v. Antinore,* 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *Walsh v. Great Atlantic & Pacific Tea Co. Inc.,* 726 F.2d 956, 965 (3d Cir.1983); *Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir.1975).

■ The Court shall approve the proposed settlement if it is fair, reasonable and adequate. *Walsh,* 726 F.2d at 965. Rule 23(e) imposes on this Court the duty of protecting absentee class members, which it executes by "assuring that the settlement represents adequate compensation for the release of the class claims." *In re General Motors,* 55 F.3d at 805 (citing 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.46 at 11–105 to 11–106 (3d Ed.1992)); *see Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir.) (court has fiduciary obligation to class in evaluating the fairness and overall adequacy of the relief provided in settlement), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Luevano v. Campbell,* 93 F.R.D. 68, 85 (D.D.C.1981) (same).

It is well-established that courts assume a limited role when reviewing a proposed class action settlement. *In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D.D.C.1974). They should not substitute their judgment for that of counsel who negotiated the settlement. *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,* 79 F.R.D. 571, 576 (E.D.Pa.1978). Rather, courts favor the resolution of disputes through voluntary compromise, *Williams v. First Nat'l Bank of Pauls Valley,* 216 U.S. 582, 585, 30 S.Ct. 441, 443, 54 L.Ed. 625 (1910), and, therefore, strongly encourage settlements. *Armstrong v. Board of School Directors of the City of Milwaukee,* 616 F.2d 305, 312 (7th Cir.1980). In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits. *Id.* at 313; *Sunrise Toyota v. Toyota Motor Co., Ltd.,* 1973–1 Trade Cases ¶ 74,398 at 93,821, 1973 WL 778 (S.D.N.Y.1973). "Absent evidence of fraud or collusion, such settlements are not to be trifled with." *Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992).

There is no obligatory test that this Court must perform in evaluating the fairness, reasonableness and adequacy of the settlement proposal presently before it. However, courts—most notably the United States Court of Appeals for the Third Circuit—have looked to a number of factors as relevant to determining the fairness of a proposed settlement. *See Girsh,* 521 F.2d at 157; *In re National Student Marketing Litigation,* 68 F.R.D. at 155. Known as the Nine-factor *Girsh* test, the following factors should be examined to ensure that the proposed settlement is fair, reasonable and adequate: (1) Adequacy of Settlement in Light of Best Possible Recovery; (2) Adequacy of Settlement in Light of All Risks of Litigation; (3) Complexity of Suit; (4) Reaction of Class; (5) Stage of Proceedings; (6) Risks of Establishing Liability; (7) Risks of Establishing Damages; (8) Risks of Maintaining Class Status; and (9) Ability to Withstand Greater Judgment. Having reviewed these factors, the Court concludes that the proposed settlement is fair, reasonable, and adequate.

**A. The Proposed Settlement is Adequate in Light of the Best Possible Recovery.**

■ The Court should measure the value of the proposed settlement relative to the relief requested to determine if it is fair, reasonable, and adequate. In this case, the proposed settlement does not require much compromise on the part of either party. Under the proposed settlement, any given class member can receive an investment comparable to the status quo before the Financing or comparable to the status quo after the Financing, but as if the Partnership had distributed the proceeds of the Financing to the Class members. The defendants, on the other hand, are able to convert the Partnership

to a LLC, as they desire. Requiring little compromise on the part of the Settlement Class, the proposed settlement adequately compensates the Class members for releasing their claims.

### B. The Proposed Settlement is Adequate in Light of All Risks of Litigation.

The Court should also determine whether, through the proposed settlement, the Class would receive a good value for a relatively weak case, or would be "selling-out" an otherwise strong case. *In re General Motors Corp.*, 55 F.3d at 806.

The Court concludes that, under the proposed settlement, the Class would receive a good value for this case. It is very early in the litigation process, so it is difficult to say how strong the Class' case is. Yet, no matter how strong the case is, the Class is receiving a settlement that meets most expectations of Class members. By providing three types of investments, the proposed settlement essentially covers any outcome for which a Class member could reasonably wish.

### C. The Proposed Settlement is Fair, Reasonable and Adequate in Light of the Costs of Going Forward with the Litigation.

Under the *Girsh* test, the Court should examine how costly the litigation could be in time and money. The costlier it is to go forward with the litigation, the greater the chances that an early settlement will be fair, reasonable and adequate. While the dispositive issues in this case are fairly simple ones—namely, whether the Partnership had authority to undertake the 1995 Financing, and what are the shareholders' rights to the revenue raised in the Financing under the Partnership Agreement and the terms and conditions of the securities—it is rare for parties to avoid significant attorneys' fees in this type of securities class action. Here, the parties are saving significant litigation costs by settling early. This factor, therefore, weighs in favor of finding the settlement fair, reasonable and adequate.

### D. The Favorable Reaction of the Class Members to the Proposed Settlement Supports the Court's Conclusion That it is Fair, Reasonable and Adequate.

In evaluating the Class' own reaction to the settlement's terms, courts look to the number and vociferousness of the objectors. *In re General Motors*, 55 F.3d at 812. In a class action involving securities, however, the Court recognizes that many shareholders have small holdings or diversified portfolios and, thus, have "insufficient incentive to contest an unpalatable settlement agreement because the cost of contesting exceeds the objector's *pro rata* benefit." *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir.1993). Thus, silence does not necessarily constitute tacit consent.

Notwithstanding the foregoing, the Court concludes that the reaction of the Class members is overwhelmingly in favor of the proposed settlement. Only 30 Class members have requested to be excluded from the Settlement Class out of the approximately 14,000 Class members given Notice of the proposed settlement. Furthermore, only one objection to the proposed settlement has been received by Class and Derivative Counsel. *See Luevano*, 93 F.R.D. at 91 ("The fact that only one sixth of one percent of the class has chosen to object to the settlement is important indication of its fairness and adequacy."). Moreover, this objection came from a shareholder who "opted-out" of the Class and did not present its views at the fairness hearing.

### E. Class and Derivative Counsel Have an Adequate Appreciation of the Merits of the Case to Reach a Fair, Reasonable and Adequate Settlement.

Another factor to be evaluated under "the *Girsh* test" is whether counsel had an adequate appreciation of the merits of the case before negotiating. Courts generally have found that counsel cannot appreciate the true value of a case before discovery has been made. Without an appreciation of the true value of a case, counsel cannot know if the settlement it reaches is fair.

■ Under different circumstances, this factor would weigh against approval of the proposed settlement in this case. This case has settled very early in the litigation process with little discovery. However, there are few, if any, disputed facts. The case turns on a determination of the authority held by the general partners and the rights held by the shareholders under the Partnership Agreement and the securities in question. A fair evaluation of the claims therefore may be made prior to discovery. This factor, while not supporting approval of the proposed settlement, does not weigh in favor of rejecting it either.

### F. The Court Will Not Consider the Risks of Establishing Liability and Damages in Evaluating the Fairness of the Proposed Settlement.

The Court should measure the fairness of the proposed settlement in light of the risks in establishing liability and damages and the potential rewards or losses therefrom. *See e.g., In re "Agent Orange" Product Liability Litigation,* 818 F.2d 145, 171 (2d Cir.1987) (evaluating district court's approval of settlement by examining strength of claims in terms of likelihood of prevailing on liability), *cert. denied sub nom. Pinkney v. Dow Chemical Co.,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Hammon,* 752 F.Supp. at 1095 (evaluating strengths and weaknesses of the class of D.C. firefighters' discrimination claims within the framework of their likelihood of establishing liability and damages); *In re Baldwin–United Corp.,* 105 F.R.D. 475, 482 (S.D.N.Y.1984) (comparing benefits of a cash settlement with risks involved in long and uncertain litigation). The higher the likelihood of proving liability and damages and the greater the value of the outcome of success, the more likely that the Court will reject a settlement not particularly favorable to the plaintiff. While the parties may have a good sense of the strengths and weaknesses of their cases, they have not briefed the merits of the case. Therefore, the Court will not consider such strengths and weaknesses in evaluating the proposed settlement. *See Luevano,* 93 F.R.D. at 86 (stating that, in evaluating fairness and adequacy of settlement in class action, court should not try case on merits).

### G. The Chances of Maintaining Class Status in this Case Are High and Should be Considered in Evaluating the Fairness of the Proposed Settlement.

The prospects of obtaining certification of the class have a significant impact on the range of recovery one can expect to obtain from the settlement. Not only does class status, by its aggregation of the claims, enlarge the value of the suit, but it also allows for a pooling of litigation resources.

For the reasons set forth in Section I of this Discussion, the Court finds that the Settlement Class is certifiable, and, therefore, the chances of maintaining class status naturally are high. Consequently, the Court shall value the Class' case as a class action claim. Yet, even with such a value placed on the Class' case, the Court still finds that, for all the reasons set forth herein, the benefits received by the Class pursuant to the proposed settlement adequately compensate the Class members for releasing their claims.

### H. The Defendants' Ability to Withstand Greater Judgment is Not a Factor in the Court's Evaluation of the Proposed Settlement.

In some cases, the defendant's inability to withstand a judgment greater than the proposed settlement weighs in favor of accepting the proposed settlement. In this case, this factor does not come into play as the defendants have considerable assets and could withstand the relief sought by the plaintiff Class.

### I. Summary.

Based on its consideration of the foregoing factors, the Court concludes that the proposed settlement in this cause is fair, reasonable and adequate, and, therefore, should be approved.

### III. THE COURT WILL AWARD CLASS AND DERIVATIVE COUNSEL ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES.

■ The proposed settlement provides for the payment by the Partnership of Class and

Derivative Counsel's fees and expenses, upon approval by the Court. Court's have historically utilized two approaches in awarding reasonable attorneys' fees in class actions: the "percentage of recovery" and "lodestar" methods. *In re Washington Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1295 (9th Cir.1994). Each method has distinct advantages for certain kinds of actions, which will make one of the methods more appropriate as a primary basis for determining the fee in any given action. In this case, for the reasons that follow, the court concludes that the lodestar method is the more appropriate method to determine reasonable attorneys' fees.

**A.  The Court Shall Apply the Lodestar Method in Determining Reasonable Attorneys' Fees.**

Courts generally use the percentage of recovery method in common fund cases on the theory that the class would be unjustly enriched if it did not compensate counsel responsible for generating the valuable fund obtained by the class. *See* Report of the Third Circuit Task Force, "Court Awarded Attorneys' Fees," 108 F.R.D. 237, 250 (1985) ("Task Force Report"); *see, e.g., Gottlieb v. Barry,* 43 F.3d 474, 487 (10th Cir.1994). Courts generally regard the lodestar method, which uses the number of hours reasonably expended, as the best approach in cases where the nature of the settlement "evades the precise evaluation needed for the percentage of recovery method." *In re General Motors Corp.,* 55 F.3d at 821. The Court's responsibility is to use the approach most helpful "in determining a fair and just award under the particular facts and circumstances of the case before it." *Gottlieb v. Wiles,* 150 F.R.D. 174, 179 (D.Colo.1993), *rev'd on other grounds sub nom. Gottlieb v. Barry,* 43 F.3d at 487, 491.

The Court believes that this case is among those cases where the plaintiff's relief is difficult to value in precise monetary terms and does not fit well into the common fund paradigm. As Class and Derivative Counsel has argued, the benefit received by the Class in the proposed settlement is the ability to choose from a number of investments. *See*

Supplemental Declaration of Daniel J. Becka in Support of Final Approval of Settlement and an Award of Attorneys' Fees and Reimbursement of Expenses ¶ 18. The Class essentially has been given the opportunity either to assume the risks that have followed and will continue to follow the 1995 Financing, or to hold an investment that does not take on such risks. It is difficult to place a precise value on this benefit and, thus, the lodestar method is most appropriate. Class and Derivative counsel concurs with the Court on this point. *Id.*

**B.  The Court Will Not Apply a Multiplier to Attorneys' Fees As Requested by Class and Derivative Counsel.**

Class and Derivative Counsel has asked the Court to consider applying a 2.34 multiplier to the $132,631.25 in attorneys's fees. *Id.* According to Counsel, the multiplier compensates them for the risk they have assumed of recovering nothing. *See* Plaintiff's Consolidated Memorandum at 29.

In *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the Supreme Court prohibited risk multipliers in statutory fee cases. Since that time, more and more courts have declined applying multiplier in common fund class actions as well. *See, e.g., In re General Motors,* 55 F.3d at 822; *Maywalt v. Parker & Parsley Petroleum Co.,* 864 F.Supp. 1422, 1435–37 (S.D.N.Y.1994), *aff'd,* 67 F.3d 1072 (2d Cir. 1995); *Trief v. Dun & Bradstreet Corp.,* 840 F.Supp. 277, 283 (S.D.N.Y.1993); *In re Bolar Pharmaceutical Co., Inc., Secs. Litigation,* 800 F.Supp. 1091, 1096–97 (E.D.N.Y.1992). These courts have concluded that awarding a risk multiplier would provide counsel with a windfall, since such a reward for their risk-taking essentially would be double counting. These courts have found a multiplier to be double counting because "the difficulty of the litigation is taken into account in the billable hours and fee rates used to calculate the lodestar figure." *In re Bolar,* 800 F.Supp. at 1097. Enhancement of that figure, therefore, has been found unnecessary by these courts. This Court concurs with the foregoing analysis, and, therefore, will not apply a multiplier to account for the risks assumed

by Class Counsel due to the case's contingent nature.

Other factors that have warranted the application of a multiplier are: (1) the complexity and magnitude of counsel's task; (2) the quality of counsel's representation; (3) the results achieved by counsel; and (4) public policy considerations. *Maywalt*, 864 F.Supp. at 1435. These factors do not call for the application of a multiplier in this case. First, the complexity of the case and quality of the representation generally are reflected in the hours billed and the rate charged for the attorneys' services, respectively. In addition, the results achieved in this case seem to be more a reflection of the Partnership's strong desire to convert to a limited liability company than any exceptional work on the part of Class and Derivative Counsel.

Counsel has failed to demonstrate how public policy would be served by the application of a multiplier. Certainly, there is no need to award a multiplier to encourage this type of litigation. The Court is certain that its award of attorneys' fees and expenses in this case will in no way discourage similar suits in the future.

Because the attorneys' fees and expenses will be paid by the Partnership, in which all the Class members still have a direct investment, the Class members indirectly will be paying such attorneys' fees. Consequently, the Class members naturally will benefit from the absence of a multiplier. Given that the lodestar method adequately compensates Class and Derivative Counsel, and that both the Class members and the defendants benefit from lower fees, the Court concludes that no multiplier should be applied.

Based upon Class and Derivative Counsel's Declaration in Support of an Award of Attorneys' Fees and Reimbursement of Expenses, the Court shall approve the reimbursement to Class and Derivative Counsel from the defendants of $132,631.25 in attorneys' fees and $38,780.17 in expenses.

## CONCLUSION

For the foregoing reasons, the Court shall approve the Second Amended Stipulation and Agreement of Compromise and Settlement in the above-entitled case and shall approve the reimbursement to Class and Derivative Counsel from the defendants of $132,631.25 in attorneys' fees and $38,780.17 in expenses. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## *ORDER AND FINAL JUDGMENT*

For the reasons articulated in the Court's Memorandum Opinion of even date herewith, it is by the Court, this 8 day of November, 1996:

**ORDERED, ADJUDGED AND DE-CREED THAT**

1. For purposes of this Final Judgment, the Court adopts and incorporates the definitions set forth in the Second Amended Stipulation and Agreement of Compromise and Settlement (the "Second Amended Stipulation") in the above-entitled case and all capitalized terms used herein shall have the definition set forth in the Second Amended Stipulation unless otherwise defined herein.

1. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action including all members of the Settlement Class.

2. The Court hereby finally certifies the Settlement Class, which consists of all persons who own or who have owned BACs, either in Series I or Series II or both, in the Partnership at any time from January 1, 1995 to June 1, 1996, pursuant to Rule 23(b) of the Federal Rules of Civil Procedure. Excluded from the Settlement Class are all persons who filed timely requests to be excluded from the Settlement Class pursuant to Rule 23(c) of the Federal Rules of Civil Procedure in accordance with the procedures set forth in the Notice of Class and Derivative Action, Determination, Settlement and Hearing on Proposed Settlement (the "Notice") provided to Settlement Class members pursuant to the Order of this Court, dated June 20, 1996, regarding Notice, Hearing and Administration of Class Action Derivative Action Settlement (the "Preliminary Order"). These individuals, as set forth on Rider A hereto, having duly excluded themselves from the Settlement Class, are not a part of

this Settlement Class and are not bound by this Final Judgment with respect to Released Class Claims.

3. The Derivative Claim is properly brought as a derivative claim under Rule 23.1 of the Federal Rules of Civil Procedure.

4. The parties to the Second Amended Stipulation shall consummate the Settlement according to the terms of the Second Amended Stipulation.

5. This Court hereby approves the Settlement set forth in the Second Amended Stipulation and the Second Amended Stipulation itself and finds that said Settlement is, in all respects, fair, reasonable, adequate and in the best interests of the Settlement Class and the Partnership, in accordance with Rules 23 and 23.1 of the Federal Rules of Civil Procedure.

6. The Court, having approved the form and content of the Notice and Summary Notice in the Preliminary Order and having found that such notices fully and accurately informed the members of the Settlement Class of all material elements of the Action, the Second Amended Stipulation, and the Settlement and that the publication, mailing, and distribution of such notices meet the requirements of Rules 23 and 23.1 of the Federal Rules of Civil Procedure and the United States Constitution, finds, based upon the affidavits of Daniel J. Becka, Esq. and Thomas R. Hobbs, that such notices have been published, mailed and distributed in accordance with the Preliminary Order.

7. The Court hereby dismisses the Amended Complaint in its entirety on the merits, with prejudice and without costs.

8. All Releasing Persons (except those members of the Settlement Class who have made a proper and timely request for exclusion from the Settlement Class with respect to the Released Class Claims, as set forth in Rider A attached hereto) are hereby forever barred and enjoined from commencing, asserting, or prosecuting in any jurisdiction or forum any Released Claims, whether asserted directly, representatively, derivatively, or in any other capacity, against any Released Persons.

9. The Partnership is hereby forever barred and enjoined from commencing, asserting, or prosecuting in any jurisdiction or forum any Released Claims, whether asserted directly, representatively, derivatively, or in any other capacity, against any Released Persons.

10. All Releasing Persons (except those members of the Settlement Class who have made a proper and timely request for exclusion from the Settlement Class with respect to the Released Class Claims, as set forth in Rider A hereto) are deemed to have released and forever discharged the Released Persons from any and all Released Claims, whether asserted directly, representatively, derivatively, or in any other capacity.

11. The Partnership is deemed to have released and forever discharged the Released Persons from any and all Released Claims, whether asserted directly, representatively, derivatively, or in any other capacity.

12. All members of the Settlement Class who validly requested exclusion from the Settlement of the Released Class Claims, as set forth in Rider A hereto, shall nonetheless be barred from commencing, asserting, or prosecuting any Released Claims on behalf of the Partnership, in any jurisdiction or forum. Furthermore, in the event that any member of the Settlement Class who validly requested exclusion from the Settlement of the Released Class claims (as set forth in Rider A hereto) hereafter asserts against any Released Person any Released Class Claims in any jurisdiction or forum seeking more than such person's *pro rata* share of the proceeds of the Financing, any judgment or decree that might be entered against such Released Person shall be reduced, if higher, to the amount of such person's *pro rata* share of the alleged proceeds of the Financing.

13. The Court hereby decrees that neither the Stipulation, the Second Amended Stipulation, this Final Judgment nor the fact of the Settlement is an admission or concession by any of the Defendants of any liability or wrongdoing whatsoever. This Final Judgment is not a finding of the validity or invalidity of any claims in the Action, or of any wrongdoing by the Defendants. The Stipulation, the Second Amended Stipulation, this

Final Judgment, the fact of the Settlement, the settlement proceedings, the settlement negotiations, and any related documents shall not be used or construed as an admission of any fault, liability, or wrongdoing by any person, or offered or received in evidence as an admission, concession, presumption, or inference against any party in any proceeding other than such proceedings as may be necessary to consummate or enforce the Second Amended Stipulation and the Settlement provided for therein.

14. Without affecting the finality of this Final Judgment in any way, this Court hereby retains continuing jurisdiction as to all matters related to the administration, consummation and enforcement of the Settlement hereby approved.

15. In the event that the Settlement does not become effective in accordance with the terms of the Second Amended Stipulation, then this Final Judgment shall be rendered null and void and shall be vacated and the Second Amended Stipulation (except for paragraphs 10, 11, 12 and 15 of the Second Amended Stipulation, which shall survive) and all papers, orders, and proceedings related thereto, shall be rendered null and void and of no further force and effect, and shall not be used or referred to for any purpose whatsoever. In such event, the Second Amended Stipulation and all negotiations and proceedings relating thereto shall be withdrawn without prejudice as to the rights of any and all parties thereto, who, subject to paragraph 15 of the Second Amended Stipulation, shall be restored to their respective positions existing as of the date of the Second Amended Stipulation and shall proceed in all respects as if the Second Amended Stipulation, the Preliminary Order and this Order had not been executed, except that the Defendants shall not be required to answer or move with respect to the Amended Complaint until 30 days after further written demand by Plaintiff.

16. Beigel Schy & White, having been conditionally designated as Class and Derivative Counsel in the Preliminary Order, is hereby finally designated as such for purposes of the Settlement.

17. Class and Derivative Counsel is awarded attorneys' fees in the amount of $132,631.25 and reimbursement of expenses in the amount of $38,780.17, for a total award of $171,411.42 to be paid by the Partnership in accordance with the Second Amended Stipulation, such award having been determined by the Court to be fair, reasonable and appropriate.

18. The Court finds that no reason exists for delay in entering Final Judgment of Dismissal pursuant to 54(b) of the Federal Rules of Civil Procedure in accordance with the Second Amended Stipulation. Accordingly, the clerk is hereby directed forthwith to enter this Final Judgment of Dismissal pursuant to Rule 54(b).

### RIDER "A" TO ORDER AND FINAL JUDGMENT CLASS MEMBERS REQUESTING EXCLUSION

| No. | Name and address | Series I BAC's Owned | Series II BAC'S Owned |
|---|---|---|---|
| 1. | Michael F. and Mary Jo Amorini<br>5004 Sweetwater Place<br>Fort Wayne, IN 46835 | 15 | |
| 2. | Dorothy M. Andrews<br>316 Jack Drive<br>Cocoa Beach, Florida 32931 | 35 | |
| 3. | John H. Baum<br>301 Beech Street<br>Hackensack, NJ 07601–2114 | 10 | |
| 4. | Marie C. Brinker, Ttee<br>117 Golf Club Lane<br>Venice, FL 34293–4111 | | 10 |

| No. | Name and address | Series I BAC's Owned | Series II BAC'S Owned |
|---|---|---|---|
| 5. | Thurston & Catherine W. Carmichael 1101 Castleton Ct. Miamisburg, OH 45342 | | 10 |
| 6. | John L. Carter 2928 First City Tower Houston, TX 77002–6760 | 10 | |
| 7. | Esther M. Cook 1316 Fenwick Lane Apartment 1218 Silver Spring, MD 20910 | | 10 |
| 8. | Peter R. Corradi Post Office Box 906 Chadds Ford, PA 19317 | 10 | |
| 9. | Frank & Teresa DaCorte 7834 Leamington Avenue Burbank, IL 60459–1538 | 10 | 20 |
| 10. | Martin Davis 212 NW Craigmont Drive Lees Summit, MO 64061–1682 | | 5 |
| 11. | Patricia J. Davis 212 NW Craigmont Drive Lees Summit, MO 64061–1682 | | 5 |
| 12. | Irma Elliot 10570 Landau Drive Wexford, PA 15090 | | 36 |
| 13. | Lloyd E. and Lorna M. Everett 5029 500 West Oak Harbor, WA 98277 | 15 | 27 |
| 14. | Joan French 4531 N. Miller Avenue Peoria Heights, IL 61614 | 10 | 10 |
| 15. | W.A. Franklin 8888 Seneca Avenue Cicero, NY 13039 | 50 | |
| 16. | Betty L. Hollis Trust Betty L. Hollis Ttee 1100 Belcher Road South, # 458 Largo, FL 33771 | | 10 |
| 17. | Kurt M. and Caroline E. Gebel 607 Park Street Waynesboro, PN 17268–2144 | | 5 |
| 18. | Jay E. and Ellen R. Israel Trustees for the Israel Revocable Trust 10387 Anson Avenue Cupertino, CA 95014 | 20 | |
| 19. | Thomas C. Jones 14 Shibah Way Bloomfield, CT 06002–1541 | 10 | |

| No. | Name and address | Series I BAC's Owned | Series II BAC'S Owned |
|---|---|---|---|
| 20. | Margaret LeMay<br>9 Forbes Place, 609<br>Dunedin, FL 34698–8514 | | 20 |
| 21. | Raymond C. Maronpot, M.D.<br>65 Aspen Drive<br>Basking Ridge, NJ 07920 | 15 | |
| 22. | D.W. Newman, M.D.<br>912 Neal Drive<br>Alexandria, VA 22308 | 50 | |
| 23. | Ann–Nadine Novak<br>6671 Commonwealth Boulevard<br>Parma Heights, OH 44130 | 5 | |
| 24. | Rogene N. Pocock, Ttees<br>2708 Riviera Drive<br>Titusville, FL 32780–5126 | 5 | |
| 25. | Dean A. Rhody, as Co–Trustee<br>Under Agreement dated 7/28/93<br>by Mallie E. Pruitt Rhody<br>311 Mistletoe Drive<br>Newport News, VA 23606 | | 10 |
| 26. | Berton J. and Alice F. Roth<br>8700 Etta Drive<br>Springfield, VA 22154–2707 | 10 | |
| 27. | Marguerite A. Simon<br>2912 Tenderfoot Hill Street<br>Colorado Springs, CO 80906 | | 100 |
| 28. | H. James Spangler<br>8 Valle Court<br>Moline, IL 61265–6129 | 5 | |
| 29. | Eva Tipps<br>123 Hilltop Lane<br>Sleepy Hollow, IL 60118–1808 | 5<br>(no longer owns) | 5<br>(no longer owns) |
| 30. | Geno J. and Camilla Tozzini<br>1450 Bristol Oaks Drive<br>Roswell, GA 30075–4177 | | 20 |
| | TOTAL: | 290 | 303 |