## In re BAAN COMPANY SECURITIES LITIGATION.

### No. CIV.A. 98–2465(ESH).

United States District Court,
District of Columbia.

Sept. 30, 2003.

Andrew Neil Friedman, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Joshua H. Vinik, Lee S. Shalov, Cary L. Talbot, Milberg, Weiss, Bershard, Hynes & Lerach, LLP, Ralph M. Stone,

Shalov, Stone & Bonner, L.L.P., New York City, for Plaintiffs.

Leslie Gordon Fagen, Lewis Farberman, Daniel J. Leffell, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Saul Murray Pilchen, Andrew L. Sandler, Colleen Patricia Mahoney, Donna L. Wilson, Stephen Paul Vaughn, Andy Gene Rickman, Skadden, Arps, Slate, Meagher & Flom, LLP, Joan Margaret Macaulay, Sidley Austin Brown & Wood, Jeffrey Steven Jacobovitz, Robert A. Jaffe, Kutak Rock, Robert James Symon, Frank Leone, Jr., Spriggs & Hollingsworth, Scott William Muller, Davis, Polk & Wardwell, Washington, DC, William K. Holmes, Melvin G. Moseley, Jr., Warner Norcross & Judd LLP, Grand Rapids, MI, for Defendants.

Luis De La Torre, Securities & Exchange Commission, Washington, DC, for Amicus.

### MEMORANDUM OPINION REGARDING SETTLEMENT APPROVAL

HUVELLE, District Judge.

This is a class action brought on behalf of all persons or entities who purchased or otherwise acquired the securities of Baan Company ("Baan" or the "Company") between January 28, 1997 and October 12, 1998 (the "Class" and the "Class Period").[1] On June 26, 2003, counsel for Lead Plaintiffs and Defendants[2] entered into a Stipu-

lation and Agreement of Settlement (the "Settlement Agreement"), which provides for the settlement of this case in exchange for the payment by Defendants of $32.5 million, plus interest from August 15, 2003.

Plaintiffs now move for final approval of the Settlement pursuant to Federal Rule 23(e). After a hearing before the Court held on September 30, 2003, and upon due consideration of the briefs, submissions and the prior proceedings herein, the Court finds that the Settlement is fair, adequate and reasonable, and hereby grants Plaintiffs' motion. In making this determination, the Court makes the following findings of fact and conclusions of law:

### I. The Settlement

1. In determining whether to approve a class action settlement, the Court must determine that the proposed settlement is "fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C.1981); *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C.1974). Approval of a proposed class action settlement lies within the discretion of the Court. *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *1, 2003 U.S. Dist. LEXIS 12344, at *4–5 (D.D.C. June 16, 2003). Moreover, in "the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits."

---

1. The Class, which was certified by Order dated July 19, 2002, is limited to those persons or entities that: (a) were residents of the United States at the time of such purchase; or (b) purchased such securities within the United States, including on the NASDAQ National Market System. Excluded from the Class are Defendants, members of their immediate families and any entity in which a Defendant has a controlling interest.

2. The Lead Plaintiffs are Ralf Hirschmann, Frances Cipriano, and Daniel DeJongh. The named Defendants are Baan (a Netherlands corporation that had dual headquarters in the Netherlands and Virginia during the Class Period); the former senior executive officers and directors of Baan; and Vanenburg Ventures B.V. ("Vanenburg") (formerly Baan Investment B.V.) (a Netherlands corporation that had a controlling interest in Baan during the Class Period).

*Osher v. SCA Realty I, Inc.,* 945 F.Supp. 298, 304 (D.D.C.1996). Finally, the inquiry on a motion to approve a settlement is a limited one, and "the Court must avoid deciding or trying to decide the likely outcome of a trial on the merits, in determining whether to approve the proposed settlement." *Nat'l Student,* 68 F.R.D. at 155.

■ 2. An assessment of the "adequacy" of the proposed settlement requires consideration by the Court of the following factors:

> [the] complexity and nature of the litigation; potential costs of litigation; the stage of the proceedings when settlement has been offered and degree of completed discovery; likelihood of establishing requisite elements of liability and damages; class reaction to settlement; risks attendant to trial; and ability of defendant to absorb a larger recovery. The opinion and judgment of experienced counsel, whose labors produced the settlement, should also receive due consideration.

*Nat'l Student,* 68 F.R.D. at 155 (citations omitted). Application of these factors here merits a finding that the Settlement is fair, reasonable and adequate.

### 1. *The Stage of the Proceedings, Complexity, Expense and Likely Duration of the Action*

■ 3. The Action was resolved after merits discovery had been substantially completed and expert reports had been exchanged. During the course of merits discovery, Plaintiffs conducted a total of 18 depositions, including those of the named Defendants; former high-level employees of Baan; and representatives of Baan's outside accounting firms. In addition, Plaintiffs reviewed hundreds of thousands of documents produced by Defendants and non-parties, including the Company's outside auditors; investment banking firms

that provided research coverage on Baan; and Baan's outside counsel during the relevant period. Plaintiffs also retained and consulted with experts regarding accounting issues and issues relating to causation and damages. The Court finds that, because extensive discovery was conducted, Plaintiffs had more than a sufficient basis upon which to assess the strength and weaknesses of the claims and defenses and the adequacy of the proposed Settlement entered into with Defendants and their counsel.

4. The Court also finds that there were complexities associated with this case that would have made a trial costly and highly uncertain. For example, the claims asserted were premised on the application of often arcane and disputed accounting principles concerning revenue recognition policies related to affiliated party transactions. In addition, the sheer number of related-party transactions at issue were substantial and subject to varying interpretations by the parties and their designated experts. There were also complex and disputed questions concerning loss causation and damages, including the extent of artificial inflation in the market price of Baan's securities as a result of Defendants' alleged misstatements and omissions; the "curative impact," if any, of certain public disclosures about Baan during the Class Period; and the number of investors actually affected by Defendants' alleged wrongful conduct.

5. The Court also finds that a trial could have taken at least a month and would have been very expensive given the heavy reliance on various experts. Moreover, based on the hotly-contested nature of the case over its almost five-year duration, there would likely have been extensive post-trial motions, further efforts at reconsideration of any substantive rulings by the Court, and appeals, all of which

would have added years to this case. A settlement—particularly one providing all-cash compensation to members of the Class for a large portion of their asserted damages—avoids these delays and uncertainties.

### 2. *The Likelihood and Risks of Establishing Liability and Damages*

6. The Court finds that there were significant risks associated with Plaintiffs' ability to prove their claims at trial. To prevail on these claims, Plaintiffs would have had to establish that Defendants made material misrepresentations and omissions; that Defendants acted knowingly or with such recklessness as to satisfy the heightened degree of *scienter* required under the Private Securities Litigation Reform Act ("PSLRA"); that members of the Class suffered damages; and that those damages were caused by defendants' conduct. *See generally TSC Indust., Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

7. In this case, Defendants denied that they committed any violations of the federal securities laws. In that regard, Defendants emphasized that their outside auditors had approved the substance and disclosure of Baan's related-party transactions during the Class Period. Defendants also submitted the reports of several accounting experts, who vouched for the propriety of the affiliated party transactions at issue. Defendants also testified at deposition that they acted in good faith and endeavored to fully and fairly disclose Baan's financial results and related-party transactions throughout the Class Period. Given these assertions, there were obvious uncertainties as to whether Plaintiffs could prove at trial that Defendants' accounting for Baan's related-party transactions during the Class Period had been improperly reported or disclosed, and even assuming that it had been, Defendants had acted with the necessary scienter.

8. There were additional uncertainties that Plaintiffs would have faced at trial concerning damages. For example, Defendants had disputed the findings of Plaintiffs' damages expert in virtually every respect, from the amount of alleged artificial inflation attributable to Defendants' allegedly improper disclosures to the extent of the damages caused by Defendants' conduct. Defendants had also asserted that, even if there were damages flowing from Defendants' alleged misstatements and omissions, there could be no recoverable damages after May 4, 1998, when members of the financial community began to publicly question the propriety of Baan's related-party transactions and the price of Baan's securities promptly declined. Had this argument been accepted by the trier of fact, all purchasers of Baan securities between May 4, 1998 and October 12, 1998 (*i.e.*, the final day of the Class Period), would have been without viable claims for relief.

9. Given these risks and uncertainties, a settlement for $32.5 million in cash represents a substantial recovery and is within the range of reasonableness. According to Plaintiffs, that number is over 16% of their estimated damages in a best case scenario, and between 32.5% and 54% of the damages estimated by Defendants' expert. *See In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2, 1998 U.S. Dist. LEXIS 23238, at *8 (D.D.C. Oct. 23, 1998) ("Courts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; but an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won,

seems to be within the targeted range of reasonableness.") (emphasis in original); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D.Pa.2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses").

### 3. *The Reaction of the Class to the Settlement*

10. Pursuant to the Court's June 30, 2003 Preliminary Order in Connection with Settlement Proceedings, over 17,500 copies of a detailed notice were mailed directly to Class members or to banks, brokers and nominees for forwarding to Class members. In addition, a summary notice of the Settlement was published in national editions of *The Wall Street Journal* and over the *Business Wire* on July 23, 2003. The direct and summary notices contained a plain-English explanation of the Settlement and also indicated that the deadline for filing objections to the Settlement was September 15, 2003.

11. No Class member has objected to the Settlement. Moreover, only three putative Class members (who have asserted their own claims against Baan in an action pending in the U.S. District Court for the Northern District of Georgia hereinafter the "*Ratliff* Action") have submitted requests to be excluded from the Class. The absence of objections to the Settlement and negligible requests for exclusion also support its approval. *See Newbridge Networks*, 1998 WL 765724, at *2, 1998 U.S. Dist. LEXIS 23238, at *7 ("The absence of objections, and the negligible requests for exclusion, give rise to a strong inference of satisfaction among the class members.").

### 4. *The Ability of Defendants to Absorb a Larger Recovery*

12. In addition to these factors, there were serious risks whether Plaintiffs could execute a judgment against Defendants had Plaintiffs succeeded at trial. For example, the principal Defendants are residents of The Netherlands, and there are unresolved questions whether that country will recognize and enforce United States judgments. In addition, while Baan apparently maintained a $15 million liability insurance policy for its directors and officers, that policy had been substantially depleted by defense-related costs and attorneys' fees related to the litigation of this case, as well as the *Ratliff* Action pending in Georgia. Also problematic was the deteriorating financial condition of Invensys plc (the London-based conglomerate that purchased Baan in 2001), which raised questions as to whether that company could continue in business. Given the above, Plaintiffs faced a serious risk that the continued prosecution of the case—even if successful—would result in a judgment against Defendants that would be partially, if not completely, uncollectible.

### 5. *The Opinion of Counsel*

13. The Court finds that the Settlement was achieved after several months of hard-fought, non-collusive and intense negotiations between the parties' counsel. In addition, the Court finds that Co–Lead Counsel are experienced in securities class actions such as this and endorse the Settlement as fair and reasonable. These factors also weigh in favor of approving the Settlement. *See In re Vitamins Antitrust Litig.*, 2001 WL 1772352, at *4, 2001 U.S. Dist. LEXIS 24026, at *27 (D.D.C. Nov. 30, 2001) ("Although the Court will not defer blindly to the views of counsel with regard to the adequacy of a settlement, it must consider that the Settlement was reached after several months of arms' length negotiation by experienced counsel and that both counsel and all parties in-

 

volved view it as a reasonable settlement"). The Court also received the invaluable assistance of an experienced retired federal judge, the Honorable Joyce Hens Green, who had presided over this case prior to her retirement and was prepared to meet with the parties to facilitate settlement. Given her extensive knowledge of the case, as well as her involvement in the settlement process, this Court has great confidence that the settlement was the result of hard-fought negotiations, and that the result represents a fair and reasonable settlement for the Class members.

## II. *The Notice*

14. Over 17,500 copies of a detailed Notice were mailed directly to Class members or to banks, brokers and nominees for forwarding to Class members. A summary notice was also published in national editions of *The Wall Street Journal* and over the *Business Wire* on July 23, 2003. The Notice contains a plain-English explanation of the Settlement and the Class members' rights and options. The Notice also describes the procedures for making objections and the date of the Settlement fairness hearing, and indicates that persons who have not excluded themselves from the Class may enter appearances through their own counsel, if desired. The Court finds that these efforts meet the due process requirements of Rule 23 of the Federal Rules of Civil Procedure which call for "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). *See also Peters v. Nat'l R.R Passenger Corp.,* 1991 U.S. Dist. LEXIS 3850, at *7 (D.D.C. Mar. 28, 1991) ("It appears in the present action that 'best practicable' and 'best efforts' were exerted to notify plaintiff of the pending class action.").

## III. *Conclusion*

15. After considering all of the above mentioned factors, the Court finds that this Settlement is adequate, fair and reasonable. Accordingly, Plaintiffs' Motion for Final Approval of the proposed Settlement is **GRANTED**. An Order accompanies this Memorandum Opinion.