992 P.2d 127

Michael A.S. CHUN, Gladys Farm, Herbert T. Imanaka, Jimmy T. Izu, Samuel Y. Kakazu, Billy G. Southwood, Eishin Tengan, and Thomas Y. Yano, Appellants–Appellants,

v.

BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM OF the STATE OF HAWAI'I;

and

Administrator of the Employees' Retirement System of the State of Hawai'i, Appellees–Appellees

Valerie Yamada Southwood and Barbara Jane Luke, Appellants–Appellants,

v.

Board of Trustees of the Employees' Retirement System of the State of Hawai'i;

and

Administrator of the Employees' Retirement System of the State of Hawai'i, Appellees–Appellees

No. 22012.

Supreme Court of Hawai'i.

Feb. 2, 2000.

Charles K.Y. Khim for the appellants-appellants Michael A.S. Chun, et al. and Valerie Yamada Southwood, et al.

Mark J. Bennett (of McCorriston Miho Miller Mukai) for the appellees-appellees Board of Trustees of the Employees' Retirement System of the State of Hawaii and Employees' Associate Justice Retirement System of the State of Hawaii.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Circuit Court Judge CRANDALL, in place of KLEIN, J., recused.

Opinion of the Court by LEVINSON, J.

■ In the present appeal, we are asked to reconsider *Montalvo v. Chang*, 64 Haw. 345, 641 P.2d 1321 (1982). In *Montalvo*, we adopted the "lodestar" method of awarding attorney's fees to plaintiffs' counsel in class action litigation where the recovery has resulted in the creation of a common fund from which the attorney's fees are drawn.[1] *Montalvo*, 64 Haw. at 361–62, 641 P.2d at 1332. The central question presented herein is whether the circuit court possessed and should have exercised the discretion to award attorney's fees based on a percentage of the common fund recovered in the class action suit.

The appellants-appellants Michael A.S. Chun, Gladys Farm, Herbert T. Imanaka, Jimmy T. Izu, Samuel Y. Kakazu, Billy G. Southwood, Eishin Tengan, Thomas Y. Yano, Valerie Yamada Southwood, and Barbara Jane Luke (collectively, the Retirees) appeal from the order of the first circuit court, entered on October 21, 1998, awarding attorney's fees in the amount of $1,027,625.50 to the Retirees' attorney, Charles K.Y. Khim.[2] The Retirees raise the following points of error on appeal: (1) the circuit court violated the "law of the case" doctrine when it reversed its own decision regarding the standing of the appellees-appellees Board of Trustees of the Employees' Retirement System of the State of Hawai'i (the Board) and the Employees' Retirement System of the State of Hawai'i (the ERS) to challenge the amount of attorney's fees being sought by the Retirees; (2) the circuit court erred in ruling that the ERS had standing to challenge the amount of attorney's fees being sought by the Retirees; (3) the circuit court abused its discretion by declining to consider calculating Khim's attorney's fees as a pure percentage of the "common fund" recovered by the Retirees; (4) the circuit court's statement that it was "personally offended" by Khim's behavior rendered its ruling invalid; (5) the circuit court erred in rejecting the doctrine of comity as relevant to the present case; and (6) the circuit court erred in finding that the ERS's attorney had been lawfully retained. The Retirees' third point on appeal has merit. Accordingly, we vacate the order of the circuit court, entered on October 21, 1998, and remand the matter to the circuit court for further proceedings regarding the method of awarding attorney's fees to Khim. Although our holding with

---

1. The "lodestar" equals the number of hours reasonably spent on a case multiplied by a reasonable hourly rate; the lodestar is usually increased by a weighted multiplier to arrive at a final award. *See Montalvo*, 64 Haw. at 358–59, 641 P.2d at 1330–31; *see also* discussion of the lodestar approach, *infra* in section III.D.

2. The Retirees and Khim also filed a notice of appeal from the order of the first circuit court,

filed on October 1, 1998, which directed Khim to pay Hawai'i Rules of Appellate Procedure (HRAP) Rule 11 sanctions to the appellee-appellee Employees Retirement System of the State of Hawai'i. Inasmuch as the Retirees do not raise any points of error on appeal regarding the circuit court's October 1, 1998 order, however, this court need not address it.

respect to the foregoing point is outcome-dispositive of the present appeal, we address the Retirees' remaining arguments in order to provide guidance to the parties and the circuit court on remand. Cf. *State v. Staley*, 91 Hawai'i 275, 277, 982 P.2d 904, 906 (1999).

## I. *BACKGROUND*

### A. *Chun I*

Prior to retiring, the Retirees (as public school principals, vice principals, or teachers) were all "ten-month" employees of the Department of Education (DOE). The present appeal arises out of two class action lawsuits—one (*Chun*) brought on behalf of retired principals and vice principals and the other (*Southwood*) on behalf of retired teachers—filed in the first circuit court. Each complaint sought relief based upon the allegation that the ERS had undercalculated the benefits to which the Retirees were entitled. The circuit court (1) entered summary judgment in favor of the retired principals and vice principals, (2) ruled that "the lump sum payment of 'earned summer salary,' paid upon retirement[,] was compensation attributable to the month in which the member of the class retired," and therefore (3) ordered the ERS to include those amounts in the recalculation of the principals' and vice principals' "average final compensation." *Chun v. Employees' Retirement Sys.*, 73 Haw. 9, 10, 828 P.2d 260, 261 (1992) (*Chun I*). The ERS appealed. In *Chun I*, this court vacated the circuit court's order and remanded the case with directions that the circuit court remand the matter to the ERS for a full administrative hearing before the Board. *Id.* at 11, 828 P.2d at 263. Based on *Chun I*, the circuit court likewise remanded the claims asserted in *Southwood* for an administrative hearing.

### B. *Chun II*

Subsequent to the administrative hearing, on March 23, 1995, the Board issued a "decision" denying all of the Retirees' claims. *Chun v. Employees' Retirement Sys.*, 87 Hawai'i 152, 158, 952 P.2d 1215, 1221 (1998) (*Chun II*). The Retirees appealed the Board's decision to the circuit court. *Id.* On March 4, 1996, the circuit court entered its "final order" reversing the Board's decision and directing that retirement pay be increased both retroactively and prospectively. The March 4, 1996 order provided in relevant part as follows:

2. [The ERS and the Board] shall recalculate the [average final compensation (]AFC[)] of all [Retirees] by including the earned salary paid in lump sum upon retirement in its calculation. However, [the ERS and the Board] should only include those mon[ie]s earned in the three years used to calculate [the AFC]. . . .

3. [The Retirees] are awarded attorney's fees only insofar as attorney[']s fees are to be paid by the [Retirees] from the funds they recover through the relief granted herein. In accordance with [the Retirees'] request, [the ERS and the Board] are ordered to deduct said reasonable attorney's fees from the additional payments that will be made to the [Retirees]. Following a final resolution of this case, . . . this court will make a final determination of the award of attorney's fees, both the amount and manner of calculation.

4. [The ERS and the Board] shall recalculate the monthly retirement and post retirement allowances of all members of the Chun class from two years prior to the filing of the complaint in *Chun v. Employees' Retirement System* in Civil No. 86–3904, and of the Southwood class from [two] years prior to the filing of the complaint in *Southwood v. Employees' Retirement System* in Civil No. 90–0510–02, in light of the recalculation of [the] AFC for all [Retirees].

5. [The ERS and the Board] shall make a lump sum payment to each [Retiree,] which represents the difference between the newly recalculated monthly retirement benefit each [Retiree] would have received pursuant to the recalculations noted hereinabove, and the monthly retirement benefit each class member received, from two years filing to the relevant complaint[s] . . . , or the date of retirement to the date of this order.

On March 11, 1996, the circuit court entered a final judgment, reversing the Board's decision dated March 23, 1995, in favor of the Retirees and against the Board and the ERS. The ERS and the Board appealed the judgment. *Chun II*, 87 Hawai'i at 155, 952 P.2d at 1218.

In *Chun II*, this court held that "the ERS (at the behest of its purported 'administrator') and 'the Board' (at the behest of the Attorney General) lacked the power to appeal the circuit court's final order and judgment." *Id.* at 157, 952 P.2d at 1220. Inasmuch as the Board and the ERS's appeal was dismissed, the circuit court's March 11, 1996 judgment remained the final judgment in the case. *See id.* at 177, 952 P.2d at 1240.

In its opinion in *Chun II*, this court observed in footnote 18 that,

although the parties do not directly address the issue in their briefs, we note that it is unclear—given the provisions of HRS § 28–8.3 (Supp.1997),[3] ... which took effect on July 1, 1995, *see* 1995 Haw. Sess. L. Act 178, §§ 1 and 18 at 295–96, 305—by what authority the ERS undertook to retain and compensate private counsel in connection with the present appeal.

*Id.* at 167 n. 18, 952 P.2d at 1230 n. 18.

### C. *Retention Of Mark J. Bennett*

On February 28, 1994, the Board voted to retain Mark J. Bennett, Esq., to represent it

in *Chun II*. On March 1, 1994, the ERS and Bennett entered into a "legal retention counsel agreement," which recited that Bennett would "serve as legal counsel for and render the necessary legal services to defend and represent the ERS in the administrative proceeding in the matter of the claim of Michael A.S. Chun, et al., against [the ERS], and in *Southwood* [.]" The agreement was amended three times—in 1995, 1997, and 1998—to provide for Bennett's continued representation.

At a hearing regarding attorney's fees conducted on June 12, 1998, the circuit court observed as follows:

THE COURT:.... [F]irst of all I will raise one of the first issues and that will be in conjunction with you, Mr. Bennett. And I will ask you by what authority or upon whose authority are you here because, as the Supreme Court decision makes clear, the existence, the legal existence of the ERS is through its board of directors, and they are already represented by the Attorney General's office.

. . . .

. . . . [T]he Supreme Court recognized the Attorney General as the attorney representing the proper entity. And so I mean basically the ERS cannot before me

---

3. HRS § 28–8.3 provides in relevant part:

**Employment of attorneys.** (a) No department of the State other than the attorney general may employ or retain any attorney, by contract or otherwise, for the purpose of representing the State or the department in any litigation, rendering legal counsel to the department, or drafting legal documents for the department; provided that the foregoing provision shall not apply to the employment or retention of attorneys:

(1) By the public utilities commission, the labor and industrial relations appeals board, and the Hawaii labor relations board;

(2) By any court or judicial or legislative office of the State;

(3) By the legislative reference bureau;

(4) By any compilation commission that may be constituted from time to time;

(5) By the real estate commission for any action involving the real estate recovery fund;

(6) By the contractors license board for any action involving the contractors recovery fund;

(7) By the trustees for any action involving the travel agency recovery fund;

(8) By the office of Hawaiian affairs;

(9) By the department of commerce and consumer affairs for the enforcement of violations of chapters 480 and 485;

(10) As grand jury counsel;

(11) By the Hawaiian home lands trust individual claims review panel;

(12) By the Hawaii health systems corporation or any of its facilities;

(13) By the auditor;

(14) By the office of ombudsman;

(15) By the insurance division;

(16) By the University of Hawaii; or

(17) By a department, in the event the attorney general, for reasons deemed by the attorney general good and sufficient, declines, to employ or retain an attorney for a department; provided that the governor thereupon waives the provision of this section.

(b) For purposes of this section the term "department" includes any department, board, commission, agency, bureau, or officer of the State.

have two attorneys. I mean I will not allow pleadings from two attorneys because this is not the practice.

. . . .

Well, here's what we will do. I mean I don't think that we will resolve all of these issues today. . . . But I will require Mr. Bennett and, if you wish, Mr. Khim, memos as to the propriety of his continued appearance of these proceedings.

On June 19, 1998, the Retirees filed a memorandum in opposition to Bennett's continued representation of the ERS, requesting that Bennett be disqualified from acting on the ERS's behalf. On June 29, 1998, the circuit court orally denied the Retirees' request to disqualify Bennett. The circuit court ruled in relevant part as follows:

THE COURT: The Court does find that Mr. Bennett was retained prior to the . . . newly enacted procurement procedure and that he was properly retained pursuant to [HRS § 28–8.3, *see supra* note 3]. And[,] as such, the Court will allow Mr. Bennett to continue on and appear in these proceedings.

The Court will note that[,] although the Supreme Court did make comments about Mr. Bennett's appearance and representation, he was not expressly disqualified from these proceedings. And[,] as Mr. Khim has indicated, this issue was not raised on appeal, and so there has been, prior to this time, no disqualification of Mr. Bennett.

On July 17, 1998, the circuit court filed an order "denying [the] request to disqualify counsel for [the ERS] and concerning other matters." In its order, the circuit court found that "[t]he continued representation of the ERS by Bennett is . . . lawful." The circuit court also reiterated its oral order that Bennett "will be allowed to fully participate in this case with regard to all attorneys' fees issues in this case."

4. The motion is styled "Appellants Chun, Et Al.'s And Southwood, Et Al.'s And Their Attorney's

D. *The Retirees' And Khim's Motion For Attorney's Fees*

On May 20, 1998, the Retirees filed a motion requesting that the circuit court, *inter alia,* prohibit the Board, the ERS, and their attorneys from participating in any hearings regarding attorney's fees. During a hearing on the motion conducted on June 12, 1998, the circuit court limited the scope of the ERS's standing, ruling as follows:

THE COURT: All right. Here's what the Court will rule preliminarily. First of all[,] the Court will grant [the] ERS ancillary standing. The limitation the Court will impose on [the] ERS's standing is that they will not be allowed to oppose or criticize the amount of the attorney's fees being requested by Mr. Khim. As far as any administrative burdens arising out of his request, you will be allowed to provide comment and criticism about that.

During a subsequent hearing conducted on June 29, 1998, the circuit court modified its prior ruling as follows:

THE COURT: The Court indicated at our last hearing that I would limit Mr. Bennett's participation in this process, but upon further reflection, the Court has decided otherwise. That the Court will allow Mr. Bennet to participate fully and completely with respect to all issues pertaining to attorney's fees . . . to be awarded.

On July 15, 1998, the Retirees and Khim filed a Motion For Attorney's Fees.[4] The Retirees and Khim moved to have Khim compensated in the amount of (1) one-third of all increases in retirement benefits retroactively calculated and paid to the Retirees and (2) a percentage of the future payments of the increase in retirement benefits to the Retirees.

In the memorandum in support of their motion, the Retirees and Khim criticized this court's adoption of the lodestar approach in *Montalvo,* 64 Haw. 345, 641 P.2d 1321, as being overly narrow and out of date. Also in their memorandum, the Retirees and Khim relied upon the method by which attorney's

Motion For Attorney's Fees."

fees were calculated and awarded in *Atchison, et al. v. Oahu Construction Company, et al.*, Civil No. 93–4360–11—which, according to the Retirees, was a class action lawsuit that had been filed in the first circuit court and that resolved in 1997—for the proposition that attorney's fees in class action lawsuits are properly calculated by awarding the attorneys a flat percentage of the total sum recovered by the prevailing party.[5]

On September 1, 1998, the Board and the ERS filed a memorandum in response to the Retirees' and Khim's motion. The Board and the ERS contended that the Retirees were improperly requesting a percentage of the common fund. In this regard, the Board and the ERS suggested that Hawai'i law required the circuit court to award attorney's fees pursuant to the lodestar method of calculating attorney's fees in class action lawsuits.

The circuit court heard the Retirees' and Khim's motion on September 25, 1998. In the course of the hearing, the following colloquy took place:

> KHIM: I really do think, Your Honor, even though it is true, Your Honor, that unpublished decisions are not given any weight, the general rule of law is that[,] in order to discourage forum shopping, courts of equal level will honor the decisions of others. I've cited the cases on that and—
>
> THE COURT: I'm not going to look at those cases and I'm not going to consider them. I'm personally offended that you would cite to me cases like that for a legal proposition.

On October 21, 1998, the circuit court entered its findings of fact (FOF's), conclusions of law (COLs), and order, which included, *inter alia*, the following FOF:

> 8. The amount of the common fund is estimated to be between $3,000,000 and $5,000,000. [The] ERS estimates, based on Mr. Khim's proposed manner of compu-

tation, the common fund to be between $4,000,000 [and] $5,000,000. Mr. Khim claims that the ERS['s] estimate is overstated by approximately 20%.

The circuit court also entered, *inter alia*, the following COLs:

> 1. The court is bound to follow *Montalvo v. Chang*, 64 Haw. 345[, 641 P.2d 1321] (1982)[,] and its lodestar method for calculating reasonable attorney's fees.
>
> 2. Mr. Khim is entitled to 1,868.41 attorney hours[,] computed as follows:
>
> | | |
> |---|---|
> | 2,266.75 | Claimed attorney hours |
> | (300.00) | Overstated hours through 2/90 |
> | 1,966.75 | Sub-total |
> | (98.34) | 5% adjustment based on Court's estimate of overstated hours |
> | **1,868.41** | **TOTAL HOURS ALLOWED** |
>
> . . . .
>
> 5. As such, the lodestar amount is **$373,682.00**.
>
> 6. The lodestar is subject to adjustment upon consideration of two additional factors, "the contingent nature of success" and "the quality of an attorney's work."
>
> . . . .
>
> 9. [T]he court concludes that the lodestar should be adjusted by a multiplier of 2.75 as requested by Mr. Khim.
>
> 10. The court hereby awards reasonable attorney's fees to Mr. Khim in the amount of **$1,027,625.50** plus G[eneral] E[xcise] T[ax].

(Boldface in original.) Accordingly, in its October 21, 1998 order, the circuit court ordered that Khim be awarded attorney's fees in the amount of $1,027,625.50, plus general excise tax.

The Retirees and Khim filed a timely notice of appeal on October 27, 1998.[6]

## II. STANDARDS OF REVIEW

### A. Conclusions Of Law (COLs)

We review the trial court's [conclusions of law] *de novo* under the right/wrong

---

5. In support of their reliance upon a non-precedential and unpublished order of the circuit court, the Retirees asserted in their memorandum that "[i]t is a well established rule of law that a Court of an equal level must follow the rule of law on a particular issue that is prevailing with other judges in that Court[.]"

6. Although Khim filed the notice of appeal in the name of the Retirees and himself "as an individual," Khim's opening brief was filed solely in the name of the Retirees.

standard. *Raines v. State,* 79 Hawai'i 219, 222, 900 P.2d 1286, 1289 (1995). "Under this ... standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Miller,* 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983). *See also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992). Thus, a [conclusion of law] "is not binding upon the appellate court and is freely reviewable for its correctness." *State v. Bowe,* 77 Hawai'i 51, 53, 881 P.2d 538, 540 (1994) (citation omitted).

*State v. Medeiros,* 89 Hawai'i 361, 364, 973 P.2d 736, 739 (1999) (quoting *Kane,* 87 Hawai'i at 74, 951 P.2d at 937 (quoting *Aickin v. Ocean View Inv. Co.,* 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997))) (ellipsis points in original).

*Brown v. Thompson,* 91 Hawai'i 1, 8–9, 979 P.2d 586, 593–94 (1999) (brackets and ellipsis points in original).

### B. *Award Of Attorneys' Fees*

"This court 'review[s] the ... denial and granting of attorney's fees under the abuse of the discretion standard.' " *Eastman v. McGowan,* 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997) (quoting *Weinberg v. Mauch,* 78 Hawai'i 40, 52–53, 890 P.2d 277, 289–290, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995)). *See also Coll v. McCarthy,* 72 Haw. 20, 28, 804 P.2d 881, 887 (1991). The same standard applies to this court's review of the amount of a trial court's award of attorney's fees. *See First Hawaiian Bank v. Smith,* 52 Haw. 591, 592, 483 P.2d 185, 186 (1971); *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 244, 413 P.2d 242, 245, *reh'g denied,* 49 Haw. 257, 414 P.2d 82 (1966); *Powers v. Shaw,* 1 Haw.App. 374, 377, 619 P.2d 1098, 1101 (1980). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (internal quotation signals and citations omitted).

*Piedvache v. Knabusch,* 88 Hawai'i 115, 118, 962 P.2d 374, 377 (1998) (brackets and ellipsis points in original).

## III. *DISCUSSION*

### A. *General Principles Governing Fee Awards*

"Normally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent[.]" *Fought & Co., Inc. v. Steel Eng'g and Erection, Inc.,* 87 Hawai'i 37, 50–51, 951 P.2d 487, 500–01 (1998) (quoting *Lee v. Aiu,* 85 Hawai'i 19, 32, 936 P.2d 655, 668 (1997)). One of the earliest exceptions to the "American Rule" is the "common fund" doctrine, which is typically applied in class actions like the one at hand.[7] *See Montalvo,* 64 Haw. at 353, 641 P.2d at 1327 (observing that "[t]he genesis of the 'common fund' as a source of attorneys' fees may be traced to century-old landmark decisions of the [United States] Supreme Court"). "The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase[,] or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his [or her] litigation, including attorneys' fees." *Id.* at 352, 641 P.2d at 1327 (quoting *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir.1977)). Recovery of attorney's fees from a common fund is considered "the most equitable way of securing such contribution." *Id.* at 353, 641 P.2d

---

7. We employ the term "common fund" somewhat loosely throughout this opinion, referring not only to the classic case in which a lump sum recovery is effected on behalf of the class and thereafter distributed among the members, but also to the case where the class action produces a common benefit. In such "common benefit" cases, courts have held that a class counsel's reasonable fees may be charged to the beneficiaries despite the absence of a true "common fund." *See, e.g., Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 522 n. 6 (1st Cir. 1991).

at 1327 (quoting *Trustees v. Greenough,* 105 U.S. 527, 532, 26 L.Ed. 1157 (1881)). Neither party in the instant case disputes the applicability of the common fund doctrine in compensating Khim for the services he rendered to the Retirees.

B. *The Circuit Court Did Not Err In Finding That The ERS Had Standing To Challenge And Criticize The Calculation Of Attorney's Fees.*

■ The Retirees argue, inasmuch as the Board and the ERS have no present interest in the common fund created by the March 11, 1996 judgment, that the circuit court erred in ruling that the ERS had standing to challenge and criticize the amount of attorney's fees being requested by the Retirees. We disagree.

Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he [or she] wants adjudicated. And the crucial inquiry in its determination is "whether the [party] has 'alleged such a personal stake in the outcome of the controversy' to warrant his [or her] invocation of . . . [the court's] jurisdiction and to justify exercise of the court's remedial powers on his [or her] behalf." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.,* 85 Hawai'i 286, 295, 944 P.2d 83, 92 (App.1997) (quoting *Hawaii's Thousand Friends v. Anderson,* 70 Haw. 276, 281–82, 768 P.2d 1293, 1298 (1989) (quoting *Life of the Land v. Land Use Comm'n,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981))) (some brackets added and some in original) (ellipsis points in original).

■ Where a party may incur an administrative burden as a result of an award of attorney's fees out of a common fund, that party may have standing to challenge and criticize the award of attorney's fees. *See Commonwealth of Kentucky Revenue Cabinet v. St. Ledger,* 955 S.W.2d 539, 542 (Ky.Ct. App.1997) (noting that party had standing to challenge award of attorney's fees from a common fund where award would "burden [party] with administrative expenses"); *United Cable Television of Baltimore Ltd.*

*Partnership v. Burch,* 354 Md. 658, 732 A.2d 887, 902 (1999) (noting that, where party had administrative interest "in minimizing the amount by which the common fund is reduced by counsel fees," party had standing to challenge such fees). In the present case, the circuit court's March 11, 1996 judgment affirmatively places upon the Board and the ERS the administrative responsibility of deducting attorney's fees from sums to be paid to the Retirees. Khim moved for an award of a percentage of the future payments of the increase in retirement benefits to the Retirees. If the circuit court had granted Khim's motion, the award would have required the Board and the ERS to deduct monies from payments to thousands of the Retirees on a periodic basis. Furthermore, the ERS and the Board periodically would have had to recalculate the amount due to Khim, inasmuch as benefits due to the Retirees would change over time given increases in, *inter alia,* cost of living and retroactive collective bargaining pay. Therefore, the Board and the ERS would incur a greater administrative burden if Khim were paid in periodic increments, based on future benefits, than if he were paid in a single lump sum. That being the case, the Board and the ERS had an administrative interest in challenging Khim's suggested method of allocating attorney's fees.

Citing to language in *Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), and *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980), the Retirees argue that, because attorney's fees in the present case are to be paid from the common fund and are not an addition to the fund, the Board and the ERS have no interest in the fund. In *Boeing,* the United States Supreme Court held that, where Boeing had "no interest in any part of the [common] fund," it lacked standing to challenge an award of attorneys' fees. 444 U.S. at 481–82, 100 S.Ct. 745. Likewise, in *Copeland,* the United States Court of Appeals for the District of Columbia Circuit observed that, where "the losing party no longer continues to have an interest in the fund[,] the contest becomes one between the successful plaintiffs and their attorneys over division of the bounty."

641 F.2d at 905 n. 57. Insofar as the potential administrative burden in the present matter gives the Board and the ERS an interest in the fund, however, *Boeing* and *Copeland* are inapposite. Accordingly, we hold that the Board and the ERS had standing to challenge and criticize the award of attorney's fees to the Retirees.

C. *The Circuit Court Did Not Violate The Law Of The Case Doctrine In Changing Its Preliminary Ruling Regarding The Board And The ERS's Standing To Challenge The Calculation Of Attorney's Fees.*

■ The Retirees allege that the circuit court "violated the doctrine of law of the case by *sua sponte* reversing its decision on the issue of [the Board and the ERS's] standing to challenge the amount of attorney's fees being sought." The Retirees, however, misconstrue the force of the "law of the case" doctrine.

■ The phrase "law of the case" has been used, *inter alia*, to refer to "the usual practice of courts to refuse to disturb all prior rulings in a particular case, including rulings made by the judge himself." *Wong v. City and County of Honolulu*, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983).

> 'Law of the case does not, however, have the inexorable effect of *res judicata* and does not preclude the court from reconsidering an earlier ruling if the court feels that the ruling was probably erroneous and more harm would be done by adhering to the earlier rule than from the delay incident to a reconsideration and the possible change in the rule of law to be applied.' 2 Moore, *Federal Practice*, [§ 12.14] p. 2266, n.11.

*Gallas v. Sanchez*, 48 Haw. 370, 382, 405 P.2d 772, 779 (1965). In fact, it has been noted that, so long as a trial court retains jurisdiction, it "always has the power to reexamine, modify, vacate, correct and reverse its prior rulings and orders." *In re Solomat Partners, L.P.*, 231 B.R. 149, 156 (B.A.P.2d Cir. 1999) (rejecting an argument that a judge was bound by law of the case established by his own prior oral order) (citing, *inter alia*, *Ferrara & Hantman v. Alvarez*, 124 F.3d 567, 583 (3d Cir.1997); *United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir.1989)).

As noted *supra*, section III.B, the ERS and the Board have standing to challenge the award of attorney's fees in the present matter. The circuit court was required to reconsider its preliminary ruling, which denied ERS standing, to prevent "harm [being] done by adhering to the earlier rule." *See Gallas*, 48 Haw. at 382, 405 P.2d at 779. Accordingly, the law of the case doctrine did not preclude the circuit court from reconsidering its preliminary ruling regarding the Board and the ERS's standing.

D. *The Circuit Court Has The Discretionary Authority To Award Fees Based On A Percentage Of The Recovery.*

The Retirees argue that the lodestar method of awarding attorney's fees in class action lawsuits should be limited to statutory "fee shifting" [8] class actions and that the "percentage method" of awarding attorney's fees should be applied in common fund cases such as the one at hand. We disagree with the Retirees' suggestion and hold that the approach to be applied in awarding attorney's fees in class action lawsuits generally be left to the discretion of the trial judge.

■ The "percentage method" of calculating attorney's fees involves the calculation of fees as a straight percentage of the common fund. *See Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1046 (Del.1996). This court has defined the "lodestar method" of calculating attorney's fees as follows:

> In essence, the initial inquiry is "how many hours were spent in what manner by which attorneys." [*Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161,] 167 [ (3d Cir.1973) ("*Lindy I*") ]. The determination of time spent in performing services "within appropriately specific categories," *id.*, is fol-

---

8. Fee shifting cases generally arise out of statutory causes of action "that include provisions for attorney's fees—typically characterized as being 'reasonable' in amount—to be awarded to the prevailing party." Third Circuit Task Force Report on Attorney Fees, 108 F.R.D. at 251.

lowed by an estimate of its worth. "The value of an attorney's time generally is reflected in his normal billing rate." *Id.* But it may be "necessary to use several different rates for the different attorneys" and the reasonable rate of compensation may differ "for different activities." *Id.* And when the hourly rate reached through the foregoing analysis is applied to the actual hours worked, a "reasonably objective basis for valuing an attorney's services" is derived. *Id.* The inquiry, however, does not end here, for other factors must be considered. The product of the first and second steps nevertheless serves as the "lodestar" of the ultimate fee award. *Id.* at 168.

*Montalvo,* 64 Haw. at 358–59, 641 P.2d at 1331. The lodestar may then be increased by a multiplier, as follows:

The first of the factors to be considered for possible adjustment of the "lodestar" determination is "the contingent nature of success," a factor which may be of special significance where "the attorney has no private agreement that guarantees payment even if no recovery is obtained." ["*Lindy I,*" 487 F.2d at 168]. The second additional factor to be examined "is the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing" the "lodestar" figure. *Id.* If the court decides an adjustment is justified on this basis, it "should set forth as specifically as possible the facts that support … [its] conclusion." *Id.* at 169.

*Id.* at 359, 641 P.2d at 1331 (some brackets added and some in original).

The appropriate method for a court to employ in determining reasonable attorney's fees from a common fund has been the subject of considerable debate. In the 1970s, courts began to apply the lodestar method rather than a percentage of the common fund. *See Goodrich,* 681 A.2d at 1046 (citing "*Lindy I*"). "The movement to a lodestar regime was predicated on concerns that 'percentage-of-recovery sometimes resulted in strikingly large fee awards,' generating criticism from the press and those within the legal profession 'that the fees were disproportionate to the actual efforts expended by the attorneys.'" *Brundidge v. Glendale Fed. Bank,* 168 Ill.2d 235, 213 Ill.Dec. 563, 659 N.E.2d 909, 912–13 (1995) (quoting Third Circuit Task Force Report on Attorney Fees, 108 F.R.D. at 242). In the decade following its inception, the lodestar method was adopted by many federal and state jurisdictions, including our own in *Montalvo:*

The [lodestar] method of calculation favored by the Third Circuit [in "*Lindy I*" and *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) ("*Lindy II*")] "has now been rather widely adopted." *Manual for Complex Litigation* … 68 [ (1977) ]; *see also Grunin v. International House of Pancakes,* 513 F.2d 114, 128 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Brandenburger v. Thompson,* 494 F.2d 885, 890 n. 7 (9th Cir.1974). We are convinced from a review of the case law in the realm of our concern that this wide acceptance is justified; the prototype offered by "*Lindy I*" and "*Lindy II*" remains among the more rational and comprehensive computational modes devised thus far. We are mindful that the "*Lindy*" standards have been criticized as overly rigid by those who are still partial to the more traditional and flexible approach of the Court of Appeals of the Second Circuit in *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.,* … 481 F.2d [1045,] 1051 [ (2d Cir.1973) ].[ ] *See* 3 H. Newberg, [*Class Actions* §§ 6920–22c, at 1132–43 (1977) ]. And while we agree the ultimate criterion is "only that the final award be reasonable under the circumstances of the case," *Alpine Pharmacy, Inc. v. Charles Pfizer & Co., supra,* we nevertheless believe a required conformance to a known process is more likely to produce the desired result than a mere suggestion of a procedure and the reiteration of an objective…. Thus, the award of attorneys' fees from common funds created by judgments in class actions should henceforth follow the guides enunciated in "*Lindy I*" and refined by "*Lindy II*".

*Id.* at 361–62, 641 P.2d at 1332 (footnotes omitted).

In the 1980s, however, two significant events led to a reconsideration of the lodestar method. *See Goodrich,* 681 A.2d at 1046. First, in *Blum v. Stenson,* 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the United States Supreme Court distinguished between the calculation of attorney's fees awards under fee-shifting statutes from the calculation of awards under a common fund. In so doing, the Supreme Court suggested that an award from a common fund is generally calculated as a percentage of the fund: "Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under [42 U.S.C.] § 1988 reflects the amount of attorney time reasonably expended on the litigation." *Id.* "Footnote 16 in *Blum* has been cited for the proposition that the Supreme Court's approval of the lodestar method in the fee-shifting context was not intended to overrule decisions which had approved percentage of the fund awards of attorney's fees in common fund cases." *Goodrich,* 681 A.2d at 1046 (citing *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1268 (D.C.Cir.1993)).

The second significant event was the release of a report issued in 1985 by a task force appointed by the Third Circuit to evaluate the effectiveness of the lodestar approach. *See* Third Circuit Task Force Report on Attorney Fees, *supra.* The Task Force expressed the concern that, "[w]hatever the merits of the *Lindy* objectives and the degree to which they are being achieved, there is a widespread belief that the deficiencies of the [lodestar] system either offset or exceed its benefits." *Id.* at 246. The Task Force recommended that attorney fee awards in common fund cases be structured as a percentage of the fund. *Id.* at 258.

In recent years, courts have exhibited a renewed preference for the percentage method over the loadstar method. *See Ramah Navajo Chapter v. Babbitt,* 50 F.Supp.2d 1091, 1096 (D.N.M.1999) (citing *Gottlieb v. Barry,* 43 F.3d 474, 482 (10th Cir.1994)). The flaws in the lodestar method have been summarized by the Illinois Supreme Court,

as set forth in *Brundidge,* 213 Ill.Dec. 563, 659 N.E.2d at 913, in the following fashion:

> We agree that the lodestar method of awarding attorney fees from common funds is not without fault. One of the major flaws of the lodestar doctrine is that it creates a disincentive for early settlement of disputes. An attorney who believes that fees will be based on the number of hours devoted to the litigation may be hesitant to settle the matter at an early stage in the proceeding. In addition, an attorney may be more inclined to spend excessive hours on the case and inflate a fee petition in the hopes of increasing the ultimate fee award.
>
> The lodestar method of awarding attorney fees is also open to valid criticism because it may "produce results that are far from homogeneous." (Third Circuit Task Force Report on Attorney Fees at 246–47.) Fees for hourly rates can be set differently by different judges. Evaluating the hours actually expended is a laborious, burdensome, and time-consuming task that may be biased by hindsight. In addition, determining the reasonable fees to be awarded based upon hourly rates and the reasonable number of hours expended may generate protracted satellite litigation involving the attorney fees award. Moreover, it may be difficult to ascertain the appropriate weighted multiplier to be applied in a given case.

*Id.* We agree that the lodestar doctrine is "not without fault." Restricting trial courts to the lodestar method alone—the approach mandated by *Montalvo*—may impact plaintiffs' attorneys unfairly and needlessly curtail settlement processes.

Courts have been reluctant, however, to banish the lodestar approach altogether. *See, e.g., Florin v. Nationsbank of Georgia,* 34 F.3d 560, 565 (7th Cir.1994) (citing *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir.1991)). The percentage method is not without flaws of its own:

> Although ... concerns with respect to lodestar awards of attorney fees are valid, it is also true that percentage attorney fee awards suffer from certain deficiencies. For example, awarding a percentage of the

common fund in attorney fees heaps a windfall on plaintiffs' counsel when the damages awarded are high but the costs and length of the litigation were comparatively slight. The appearance of impropriety is most pronounced when the individual claimants will receive only a small amount of the final award. In addition, awarding attorney fees based on a percentage of the recovery may provide an incentive to plaintiffs' counsel to settle cases prematurely rather than continue the litigation. Also, percentage awards may prompt attorneys to be more receptive to representing class members when the issues are relatively straightforward and can be disposed of quickly, and may cause attorneys to decline representation when the issues appear complicated and the litigation protracted.

*Brundidge,* 213 Ill.Dec. 563, 659 N.E.2d at 913–14. Additionally, the lodestar method has certain advantages over the percentage method:

First, the lodestar process initially responded to concerns that a percentage approach resulted in over-compensation for attorneys. Requiring an explicit accounting of hours and rate provides greater accountability. Second, the separation of multiplier and a lodestar provides—in theory at least—a means of accounting both for the hours and rate reasonable in the type of case and for the risk an attorney assumes in undertaking a case.

In addition, the lodestar encourages attorneys to assess the marginal value of continuing to work on the case. Assured of recovering a "reasonable fee" if victorious, an attorney will not find it worthwhile to spend time that does not add to the value of the suit, since there is significant risk that the court will in the end disapprove such time. A frequently cited advantage to the percentage method—its alignment of class attorney's interests with those of the client—may, as the district court noted, encourage holding out or early settlement on the basis of the expected value of the recovery. These incentive effects ... indicate at least that the door should not be closed on lodestar awards.

*Florin,* 34 F.3d at 565–66 (quoting *Harman,* 945 F.2d at 974) (ellipsis points in original). Bearing in mind these considerations, we agree that the lodestar approach entails sufficient benefits that it should not be altogether abandoned at the present time.

In an attempt to reconcile the tension between the percentage and lodestar approaches, the modern trend in both federal and state courts is to vest the trial court with the discretion to opt for either the percentage method or the lodestar method in determining the amount of fees to be awarded in common fund cases. *See, e.g., United States v. 8.0 Acres of Land,* 197 F.3d 24, 33 (1st Cir.1999) (observing that "[t]he trial court enjoys 'extremely broad' latitude in determining the appropriate shares of the common fund, and may calculate such an award either on the basis of a reasonable percentage of the fund, or using a lodestar method"); *Savoie v. Merchants Bank,* 166 F.3d 456, 461 (2d Cir.1999) (assessing the district court's application of the lodestar method, rather than the percentage approach, under an abuse of discretion standard); *Williams v. MGM–Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th Cir.1997) (reviewing for abuse of discretion); *Johnston v. Comerica Mortgage Corp.,* 83 F.3d 241, 246 (8th Cir.1996) (noting that "[i]t is within the discretion of the district court to choose which method to apply"); *Florin,* 34 F.3d at 566 ("restat[ing] the law ... that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court"); *Municipality of Anchorage v. Gallion,* 944 P.2d 436, 447 (Alaska 1997) (noting that "counsel's fees might be calculated by either a lodestar or percentage of fund approach") (citing *Municipality of Anchorage v. Gentile,* 922 P.2d 248, 266 (Alaska 1996)); *Goodrich,* 681 A.2d at 1050 (observing that "adoption of a mandatory methodology or particular mathematical model for determining attorney's fees in common fund cases would be the antithesis of the equitable principles from which the concept of such awards originated"); *Brundidge,* 213 Ill.Dec. 563, 659 N.E.2d at 914 (holding "that the circuit court is vested with the discretionary authority to choose the percentage-of-the-award method or the lodestar method");

*Wisconsin Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 207 Wis.2d 1, 558 N.W.2d 83, 99 (1997) (holding that, "[i]n calculating reasonable attorney fees, the circuit court shall have discretion to base its award on either a percentage of the fund recovered or the lodestar method of a reasonable hourly rate multiplied by a reasonable number of hours"); *cf. Osher v. SCA Realty I, Inc.*, 945 F.Supp. 298, 307 (D.D.C.1996) (noting that "[t]he Court's responsibility is to use the approach most helpful 'in determining a fair and just award under the particular facts and circumstances of the case before it'") (quoting *Gottlieb v. Wiles*, 150 F.R.D. 174, 179 (D.Colo.1993)); *but see Swedish Hosp.*, 1 F.3d at 1272 (concluding that "percentage-of-the-fund is the proper method for calculating fees in a common fund case"); *Bowles v. Washington Dep't of Retirement Sys.*, 121 Wash.2d 52, 847 P.2d 440, 451 (1993) (holding that, "[t]his being a common fund case, we apply the percentage of recovery approach").

■■■■ We agree that, "because each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms." *8.0 Acres of Land*, 197 F.3d at 33 (quoting *In re Fidelity/Micron Securities Litig.*, 167 F.3d 735, 737 (1st Cir.1999)). Accordingly, we hold that, in common fund cases, the decision whether to employ the percentage method or the lodestar method be reposed within the discretion of the trial court. In so holding, we modify as follows the exclusive reliance on the lodestar method prescribed in *Montalvo*. To the extent that *Montalvo* dictates that the lodestar method alone may be used in calculating attorney's fees in common fund cases, we overrule it. However, we continue to adhere to *Montalvo* 's explication of the mechanics of the lodestar method.

In *Brundidge*, the Illinois Supreme Court succinctly described the analysis to be undertaken by the trial court:

Awarding attorney fees to plaintiffs' counsel based on a percentage of the fund held by the court is, overall, a fair and expeditious method that reflects the economics of legal practice and equitably compensates counsel for the time, effort, and risks associated with representing the plaintiff class. However, because percentage-of-the-fund recovery suffers from certain infirmities, there may be circumstances where the lodestar method will remain the more appropriate method of awarding fees.... As observed in *Rawlings*, 9 F.3d at 516:

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.... The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that the district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them."

*Brundidge*, 213 Ill.Dec. 563, 659 N.E.2d at 914. Thus, placing the decision whether to apply the percentage method or the lodestar method within the discretion of the trial court will allow the trial court to identify the fee award that most equitably compensates plaintiffs' counsel, while at the same time protecting the interests of the class members for whose benefit the common fund was created.

In the present case, the circuit court denied the Retirees' and Khim's motion for attorney's fees based on a percentage approach. The circuit court believed that its ruling was dictated by this court's decision in *Montalvo*, which adopted the lodestar method of awarding attorney's fees. Indeed, "[c]ourts *generally* regard the lodestar method ... as the best approach in cases where the nature of the settlement 'evades the precise evaluation needed for the percentage of recovery method.'" *Osher*, 945 F.Supp. at 307 (quoting *In re General Motors Corp.*, 55 F.3d 768, 821 (3d Cir.1995)) (emphasis added); *see also Gallion*, 944 P.2d at 447 (recognizing "that any difficulty in calculating the value of the common benefit may make the percentage approach 'inappropriate'" (citing *Gentile*, 922 P.2d at 266)). However, because

we hold that the circuit court has the discretionary authority to award fees based on a percentage of the recovery, we vacate the circuit court's order and remand for further proceedings regarding the method of calculating the award of attorney's fees to Khim.

### E. The Circuit Court Did Not Err In Refusing To Apply The Principle Of Comity To The Present Case.

In *Atchison, supra,* the circuit court apparently calculated attorney's fees in a class action lawsuit employing the percentage method, rather than the lodestar approach. In an attempt to import *Atchison* into the present case, the Retirees argue that the circuit court violated the principle of comity in refusing to consider the *Atchison* decision. The Retirees' argument is without merit.

■ Although this jurisdiction has yet expressly to articulate the rule, other jurisdictions have adopted the position that unpublished decisions of trial courts have no precedential value. *See, e.g., Santa Ana Hosp. Med. Ctr. v. Belshe,* 56 Cal.App.4th 819, 65 Cal.Rptr.2d 754, 761 (1997) (observing that "a written trial court ruling has no precedential value"); *In re Marriage of McBride,* 166 Ill.App.3d 504, 116 Ill.Dec. 880, 519 N.E.2d 1095, 1101 (1988) (addressing "the traditional rule that a court is not bound to and ordinarily will not take judicial notice of the proceedings or record in another cause"); *Soderberg v. Weisel,* 455 Pa.Super. 158, 687 A.2d 839, 843 n. 4 (1997) (noting that "[t]rial court decisions are instructive ... but not precedential"); *Kitsap County v. Allstate Ins. Co.,* 136 Wash.2d 567, 964 P.2d 1173, 1178 n. 10 (1998) (observing that "[u]npublished opinions have no precedential value and, therefore, we have not considered them"); *cf.* Hawai'i Rules of Appellate Proce-

dure (HRAP) Rule 35(c) (1996) (providing that an "unpublished dispositional order [of the Hawai'i Supreme Court] shall not be cited"); *Baugus v. Special Indem. Fund,* 966 P.2d 801, 803 n. 1 (Okla.Ct.App.) (observing that, "[e]ven more disturbing, there are indications in the record that the unpublished [appellate] case may have been cited to the trial court"), *cert. denied* (1998). *Atchison* is apparently an unpublished order of a trial court. Accordingly, it may not be cited to this or any other court as authority.

■ The Retirees nonetheless contend that the circuit court should have followed *Atchison* in the interests of comity. Comity may be broadly defined as "reciprocity." *See State Bd. of Registration for Prof'l Eng'rs v. Eberenz,* 701 N.E.2d 892, 895 (Ind.Ct.App. 1998) (citing *Strobl v. Sawicki,* 41 Misc.2d 923, 247 N.Y.S.2d 12, 15 (N.Y.Fam.Ct.1964)). In the legal realm, comity is more commonly defined "as the principle that courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state [or jurisdiction] out of deference and mutual respect." *Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians,* 229 Wis.2d 581, 599 N.W.2d 911, 917 n. 3 (Ct.App.1999) (quoting *Local 913 v. Manitowoc County,* 140 Wis.2d 476, 410 N.W.2d 641, 645 (Ct.App.1987)) (brackets in original); *see also Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1307 (1990) (defining comity as "the principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another" (brackets, citation, and internal quotation signals omitted)).

■ The principle of comity cannot be applied to the question of a trial court's calculation of attorney's fees from a common fund recovered in a class action lawsuit.[9] As

---

9. Furthermore, the Retirees fail to provide, and we have been unable to unearth, any support for their contention that the principle of comity necessarily applies to the decisions of trial courts *within* the same state regarding *entirely different matters.* This court has observed that

"[a] judge should generally be hesitant to modify, vacate[,] or overrule a prior interlocutory order of another judge who sits in the same court. Judicial restraint in this situation stems from considerations of courtesy and

comity in a court with multiple judges, where each judge has equal and concurrent jurisdiction.

*Wong,* 66 Haw. at 395, 665 P.2d at 162 (emphasis added). *Wong,* however, addressed the "modification of a prior ruling of another court of equal and concurrent jurisdiction" within the four corners of the *same matter. Id.* at 396, 665 P.2d at 162. Accordingly, *Wong* does not support the Retirees' argument. Indeed, *Wong* actually addresses an iteration of the "law of the

noted above, "each common fund case presents its own unique set of circumstances, [and] trial courts must assess each request for fees and expenses on its own terms." *8.0 Acres of Land,* 197 F.3d at 33. Inasmuch as each case must be assessed *on its own terms,* a trial court determining attorney's fees in a common fund case may not defer to another trial court's decision in a different case. Accordingly, the circuit court did not err in declining to apply the principle of comity to the present matter.

F. *The Circuit Court's Use Of The Phrase "Personally Offended" Did Not Invalidate The Circuit Court's Ruling.*

 The Retirees argue that the circuit court "erred in using the 'personally offended' standard" in refusing to consider Khim's argument regarding *Atchison* and the principle of comity. However, "personally offended" is not a standard of review. Rather, the clear context of the circuit court's use of the phrase "personally offended" reflects the mere expression of frustration regarding the Retirees' argument.

 The Retirees assert that the circuit court judge violated Canon 3.B(5) of The Code of Judicial Conduct (Revised) (1992) (CJC), which provides that "[a] judge shall perform judicial duties without bias or prejudice." However, "[a] court's statement to counsel that indicates frustration with counsel's behavior is not enough to establish bias or prejudice." *Consolidated Rail Corp. v. Yashinsky,* 170 F.3d 591, 597 (6th Cir.1999); *cf. Rhodes v. McDannel,* 945 F.2d 117, 120

(6th Cir.1991) (noting that a "judge's admonishment of counsel exhibited frustration, but not bias or prejudice"). The Retirees have failed to adduce any evidence, therefore, that the circuit court judge was biased or prejudiced in violation of CJC Canon 3.B(5). Accordingly, the circuit court's use of the phrase "personally offended" in addressing Khim did not render invalid its decision regarding attorney's fees.

G. *This Court Lacks Appellate Jurisdiction To Review The Retirees' Argument That The Circuit Court Erred In Refusing To Disqualify Bennett.*

The Retirees argue that "the lower court erred by not disqualifying Mr. Bennett from representing [the Board and the ERS] since he was retained in violation of HRS § 28–8.3." *See supra* note 3. Inasmuch as the Retirees failed to appeal from the circuit court's order regarding Bennett's retention, however, we do not have jurisdiction to review their argument.

The Retirees filed notices of appeal from (1) the circuit court's October 1, 1998 order granting the Board and the ERS's motion to impose HRAP Rule 11 Sanctions against Khim and (2) the circuit court's October 21, 1998 order granting Khim $1,027,625.50 in attorney's fees. The Retirees did *not* file a notice of appeal from the circuit court's July 17, 1998 order "denying [their] request to disqualify counsel for [the ERS]."

 A post-judgment order is an appealable final order, pursuant to HRS § 641–1(a) (1993),[10] if the order finally determines the

case" doctrine, *see supra* section III.B. *Cf. Amfac,* 74 Haw. at 121, 839 P.2d at 29 (noting that "law of the case" has been used to refer, *inter alia,* to "the question whether a trial court is bound to follow a prior interlocutory decision of fact or law made in the same case by another judge of the same court").

The Retirees do cite *Buna v. Pacific Far East Line, Inc.,* 441 F.Supp. 1360, 1365 (N.D.Cal. 1977), for the proposition that "[j]udges of the same district court customarily follow a previous decision of a brother judge upon the same question except in unusual or exceptional circumstances." Inasmuch as this court is not bound by the dicta of federal district courts, and has never adopted a proposition such as that articulated in *Buna,* we decline to do so now.

The Retirees also attempt to rely on *Neuschafer v. Whitley,* 860 F.2d 1470, 1476 (9th Cir.1988), *State of California, Dep't of Health Servs. v. United States Dept. of Health & Human Servs.,* 853 F.2d 634, 638 (9th Cir.1988), and *In re Carmona,* 224 F.Supp. 497, 498–99 (S.D.Cal.1963), for the assertion that, where a judge has decided a question of law in one manner, another judge in the same jurisdiction should not undertake to decide it another way. Inasmuch as these cases all address a court's obligation to follow prior *published appellate* decisions, however, they are entirely inapposite to the present matter.

10. HRS § 641–1(a) provides in relevant part that "[a]ppeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit

post-judgment proceeding. *See Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.*, 68 Haw. 368, 369–70, 714 P.2d 936, 937 (1986). " 'Final order' means an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Id.* at 370, 714 P.2d at 937 (quoting *Gealon v. Keala*, 60 Haw. 513, 520, 591 P.2d 621, 626 (1979)).

■ In the instant case, final judgment on the Retirees' complaints was entered on March 11, 1996. The 1998 proceeding regarding the dispute over the continued retention of Bennett was, therefore, a post-judgment proceeding. Inasmuch as the circuit court's July 17, 1998 order determined the rights of the ERS to continue to retain Bennett as its attorney, leaving nothing further to be accomplished on the issue, the order was final.[11] *See Familian Northwest*, 68 Haw. at 370, 714 P.2d at 937. Accordingly, the July 17, 1998 order was an appealable final order.

The notice of appeal "shall designate the judgment, order[,] or part thereof appealed from." HRAP Rule 3(c) (1996). Inasmuch as Retirees did not, in either of their notices of appeal, designate the July 17, 1998 order as an order from which an appeal was being taken, they have not properly appealed it. Accordingly, we lack appellate jurisdiction over the propriety of the circuit court's refusal to disqualify Bennett.

## IV. CONCLUSION

Based on the foregoing analysis, we vacate the order of the first circuit court, entered on October 21, 1998, and remand the matter to the circuit court for further proceedings regarding the method of awarding attorney's fees to Khim.

---

... courts ..., to the supreme court ..., except as otherwise provided by law[.]''

11. The Retirees' argument that "the motion to disqualify counsel[,] which was filed in the lower court[,] was part and parcel of the motion for attorney's fees" is without merit. The two motions raised distinct factual and legal issues, which were resolved in two separate orders.