305 F.Supp.2d 100 (2004)
In re: VITAMINS ANTITRUST LITIGATION.
Livengood Feeds, Inc., Plaintiffs,
v.
Merck KGaA., Defendants.
Nos. MISC. 99-197(TFH), MDL 1285.
United States District Court, District of Columbia.
February 18, 2004.
*101 Stephen John Pollak, pro se, Shea & Gardner, Washington, DC, for Special Master.
Jodi Trulove, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Jonathan David Schiller, Boies, Schiller & Flexner, LLP, Washington, DC, Stephen L. Klimjack, Steven A. Martino, Jackson, Taylor, Martino & Hedge, John W. Sharbrough, III, M. Stephen Dampier, Mary Elizabeth Snow, P. Dean Waite, Jr., The Sharbrough Law Firm, PC, Mobile, AL, Kenneth L. Adams, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, Roberta D. Liebenberg, Fine, Kaplan & Black, Philadelphia, PA, Bruce H. Simon, Cohen, Weiss and Simon, LLP, New York, NY, M. Eric Frankovitch, Frankovitch, Anetakis, Colantonio & Simon, Steven M. Recht, Weirton, WV, Craig C. Corbitt, Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P., San Francisco, CA, Steven O. Sidener, Gold Bennett & Cera LLP, San Francisco, CA, Richard Alan Arnold, Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, PA, Miami, FL, Joseph Michael Vanek, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, Gerald G. Saltarelli, Butler Rubin Saltarelli & Boyd, Chicago, IL, C. Brooks Wood, Morrison & Heckler, LLP, Kansas City, MO, Robert II Heuck, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Dallas D. Ball, Ballentine, SC, Daniel S. Mason, Joseph W. Bell, Peter F. Burns, Sara M. Scott, Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P., San Francisco, CA, Eric Sean Jackson, Robins, Kaplan, Miller & Ciresi, L.L.P., Washington, DC, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, P.A., K. Craig Wildfang, Robins, Kaplan, Miller & Ciresi, Andrew S. Birrell, Minneapolis, MN, Kevin A. Bowman, Sebaly, Shillito & Dyer, Dayton, OH, Gordon Ball, Knoxville, TN, Elaine Metlin, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Bradley Stuart Lui, Morrison & Foerster, LLP, Robert Kenly Webster, Washington, DC, John F. Kinney, Freeman, Freeman & Salzman, PC, Chicago, IL, Lawrence Byrne, White & Case, New York, NY, Charles A. Graddick, Sims, Graddick & Dodson, P.C., Mobile, AL, William James Bachman, Williams & Connolly, Frank Panopoulos, White & Case, L.L.P., Washington, DC, Trawick H. Stubbs, Jr., Stubbs & Perdue, PA, New Bern, CA, Lee Allen Freeman, Freeman, Freeman & Salzman, P.C., Chicago, IL, Michael James Flannery, The David Danis Law Firm, P.C., St. Louis, MO, Brian A. Ratner, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Terri Chadick, Conner & Winters, P.L.L.C., Fayetteville, AR, Philip Dean Bartz, McKenna, Long & Aldridge & Norman, L.L.P., Washington, DC, Steven E. Uhr, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, John Edward Schmidtlein, Williams & Connolly, Washington, DC, Timothy J. Becker, Zimmerman Reed, P.L.L.P., Minneapolis, MN, Michael Orth Ware, Mayer, Brown, Rowe & Maw LLP, New York, NY, Richard J. Leveridge, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., David H. Bamberger, Edward Smith Scheideman, Piper Rudnick, LLP, John Justin Rosenthal, Howrey Simon Arnold & White, LLP, Washington, DC, for Plaintiffs.
Bruce L. Montgomery, Arnold & Porter, Scott William Muller, Davis, Polk & Wardwell, Geoffrey Smith Irwin, Jeffrey Bossert Clark, Karen Natalie Walker, Kirkland & Ellis LLP, Jonathan Lee Greenblatt, Shearman & Sterling, Christopher J. Lovrien, Mary-Helen Perry, Jones Day, Donald I. Baker, Baker & Miller, PLLC, Aileen Meyer, Pillsbury Winthrop, *102 LLP, Michael L. Denger, Gibson, Dunn & Crutcher, LLP, William L. Monts, III, Hogan & Hartson, L.L.P., Andrew Martin McCormack, King & Spalding Ann Marie Malekzadeh, King & Spalding, David Robert Cashdan, Cashdan, Golden & Kane, P.L.L.C., Kerri L. Ruttenberg, King & Spalding, John Worth Kern, IV, Janis, Schuelke & Wechsler, Geoffrey Smith Irwin, David Alan Balto, White & Case, L.L.P., Margaret Kolodny Pfeiffer, Sullivan & Cromwell, LLP, George J. Terwilliger, White & Case, L.L.P., Jacqueline Ray Denning, Arnold & Porter, Kevin Richard Sullivan, King & Spalding, Washington, DC, George T. Manning, Jones, Day, Reavis & Pogue, Atlanta, GA, Tyrone C. Fahner, Mayer, Brown & Platt, Chicago, IL, Richard Schwed, Stephen Fishbein, Shearman & Sterling, Lawrence Portnoy, Suzanne E. Kerrigan, Davis, Polk & Wardwell, Aidan Synnott, Gregory A. Kasper, Melanie H. Stein, Paul, Weiss, Rifkind, Wharton & Garrison, Thomas M. Mueller, Mayer, Brown, Rowe & Maw, Steven W. Gold, Mintz & Gold, L.L.P., New York, NY, John M. Majoras, Jones, Day, Reavis & Pogue, John F. McCaffrey, McLaughlin & McCaffrey, L.L.P., Cleveland, OH, David M. Balabanian, Bingham McCutchen LLP, San Francisco, CA, Erin R. Brewster, MacCorkle Lavender & Casey, PLLC, Charleston, WV, Mark Riera, Sheppard, Mullin, Richter & Hampton, LLP, Los Angeles, CA, Bethany G. Lukitsch, James H. Walsh, Stephanie L. Karfias, McGuire Woods, LLP, Richmond, VA, Andrew S. Marovitz, Britt Miller, Mayer, Brown & Platt, Chicago, IL, Catherine J. Hertzig, Jonathan Shiffman, Mayer, Brown, Rowe & Maw, D. Stuart Meiklejohn, Stacey R. Friedman, Sullivan & Cromwell, New York, NY, Michael Logan Ware, San Francisco, CA, Donald I. Baker, W. Todd Miller, Baker & Miller PLLC, Donald C. Klawiter, Thomas John Lang, Morgan, Lewis & Bockius, L.L.P., Waashington, DC, Alice M. Goldwire Glass, Lyme, NH, Cathy M. Armstrong, Thorp Reed & Armstrong, LLP, Wheeling, WV, Charles E. Jarrett, Baker & Hostetler, Cleveland, OH, Holly A. House, McCutchen Doyle Brown & Eneneer, San Francisco, CA, Sutton Keany, Pillsbury & Winthrop, LLP, New York, NY, E. Perry Johnson, Jeffrey S. Russell, Bryan Cave LLP, St. Louis, MO, for Defendants.
William W. Kocher, Columbus, OH, Philip A. Steinberg, Bala Cynwyd, PA, for Claimant.
Eric B. Fastiff, Leiff, Cabraser, Heimann & Bernstein, LLP, Guido Saveri, Saveri & Saveri, PC, San Francisco, CA, Jeffrey Andrew Bartos, Guerrieri, Edmond & Clayman, Washington, DC, James P. McCarthy, Mark Alan Jacobson, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, Michael G. Lenett, The Cuneo Law Group, P.C., Washington, DC, Peter Heidenberger, Chevy Chase, MD, Paul R. Taskier, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for Movant.
John Peter Relman, Relman & Associates, Gerald Zingone, Thelan Reid & Priest, LLC, Washington, DC, for Amicus.
Steven R. Kuney, Williams & Connolly, Garrett Berry Magens Duarte, Collier Shannon Scott, PLLC, Washington, DC, for Intervenor.

MEMORIALIZING OPINION

Re: Final Approval of Biotin and Niacin Defendants Settlements
THOMAS F. HOGAN, Chief Judge.
Pending before the Court is class plaintiffs' Motion pursuant to Fed.R.Civ.P. 23(e) and 54 for Final Approval of Settlement Between Class Plaintiffs and Defendants Sumitomo Chemical Co., Ltd., Sumitomo Chemical America, Inc., Tanabe *103 Seiyaku Co., Ltd., Tanabe USA, Inc., Lonza Group Ltd., Lonza AG, Lonza Inc., Degussa AG, Degussa Corp., Nepera Inc., Reilly Industries, Inc., and Reilly Chemicals, S.A. (hereinafter, the "Biotin and Niacin Defendants") and for Entry of Final Judgment. Upon careful consideration of class plaintiffs' Motion, the representations made at the February 18, 2004 hearing on final approval, and the entire record herein, and in accordance with the Court's February 18, 2004 bench opinion, class plaintiffs' Motion for Final Approval and for Entry of Final Judgment is granted.

I. BACKGROUND
The proposed settlements are the fifth, sixth, seventh and eighth partial class settlements arising from litigation surrounding a worldwide conspiracy or conspiracies to fix prices and allocate markets for the sale of bulk vitamins. On October 14, 2003, the Court preliminarily approved the proposed settlements with the Biotin and Niacin Defendants and certified the settlement class. The Vitamin Products Class consists of all persons or entities who directly purchased vitamins A, C, E, B1, B2, B3, B5, B6, B9, B12, H, beta carotene, astaxanthin, canthaxanthin and/or vitamins premixes for delivery in the United States from any of the Defendants or their co-conspirators from January 1, 1988 through December 31, 1998 (excluding all governmental entities, and defendants, their co-conspirators, and their respective subsidiaries and affiliates). The Settlement Agreements provide that the Biotin and Niacin Defendants will make a cash payments totaling $105,930,000.00 plus interest for the benefit of the Vitamin Products Class.
The Settlement Agreements will dismiss all claims against the Biotin and Niacin Defendants. The release does not include any potential or current claims based upon purchases of vitamin products sold outside the United States or for delivery outside the United States, nor does it include claims based on indirect purchases of vitamins products.

II. DISCUSSION
Approval of the proposed class action settlement lies within the discretion of this Court. United States v. District of Columbia, 933 F.Supp. 42, 47 (D.D.C.1996). Fed.R.Civ.P. 23(e) provides that:
A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.
Fed.R.Civ.P. 23(e). The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action settlements. Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C.Cir.1993). "The Court must eschew any rubber stamp approval ... yet, at the same time, must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." United States v. District of Columbia, 933 F.Supp. at 47. The exercise of this discretion, however, is constrained by the "principle of preference" favoring and encouraging settlements in appropriate cases. Pigford v. Glickman, 185 F.R.D. 82, 103 (D.D.C.1999).
There is no single test in this Circuit for determining whether a proposed class action settlement should be approved under Rule 23(e). Pigford, 185 F.R.D. at 98. Generally, in determining whether settlement should be approved, courts consider whether the proposed settlement "is fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are being served if the *104 litigation is resolved by settlement rather than pursued." Manual for Complex Litigation (Third), § 30.42 at 238 (1995). In making this determination, courts in this Circuit have examined the following factors: (a) whether the settlement is the result of arm's length negotiations;[1] (b) the terms of the settlement in relation to the strength of plaintiffs' case;[2] (c) the status of the litigation at the time of settlement;[3] (d) the reaction of the class;[4] and, (e) the opinion of experienced counsel.[5]

A. Arm's Length Negotiations
A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." Manual for Complex Litig., at § 30.42. According to plaintiffs' counsel, the Biotin and Niacin Defendants' settlements were reached through "extensive arm's length negotiations, undertaken in good faith, and after years of extensive factual investigation, legal analysis, discovery, motion practice, and trial preparation." Pl's Memo. at 10. This Settlement was negotiated by very experienced antitrust and class action attorneys. Because there is nothing in the course of the negotiations or the face of the Settlement that "disclose[s] grounds to doubt its fairness," id. (citing Manual for Complex Litig., at § 30.41), the Court finds that the Settlement at issue was the result of arms' length negotiations and is thus presumptively fair, adequate and reasonable.

B. Terms of Settlement
Under the terms of the Settlement Agreements, the Biotin and Niacin Defendants have paid $105,930,000.00 plus interest to settle the claims of the Vitamins Products Class. The settlement amount is significant compared to past settlements in this litigation. The first class settlement in this case involved defendants that held over ninety percent of U.S. vitamin sales, and resulted in a payment by those companies of $1.05 billion before opt outs resulting in a distribution to the class after opt outs of $247 million plus $123 million in attorneys fees. The Defendants involved in these settlements possessed less than 3.5 percent of the global market share for all vitamins, yet the Vitamins Products Class will receive $106 million from the current settlements. Furthermore, the settlements represent over 75 percent of the approximately $137,000,000 in U.S. purchases made by the Vitamins Products Class from the Biotin and Niacin Defendants.
Given the complexities of proof in antitrust cases and the ordinary risks and delays inherent in complex antitrust litigation, the Settlements appears to provide a significant benefit to the Class. Defendants *105 would also appear to benefit from an early and definite resolution to this dispute. Therefore, after weighing the possibilities of recovery and the risks and expenses of protracted litigation for both sides, the Court finds that the instant Settlement falls within the range of fair, adequate and reasonable settlements deserving of final approval.

C. Status of Litigation at Settlement
The Settlement is a significant benefit to the Class Plaintiffs, especially at this point in the litigation. The Court has not yet ruled on the Biotin and Niacin Defendants' summary judgment motions challenging whether they were involved in an all-vitamins conspiracy. The Biotin and Niacin settlements provide the Vitamins Products Class substantially more recoveries than they would have received if the Court ruled in Defendants favor on those motions. On the other hand, if the Court held that an all-vitamins conspiracy did exist, the Biotin and Niacin Defendants would have been exposed to liability for damages in an amount that is exceedingly larger than the $106 million they agree to pay in these settlements.
The Settlement Agreements are a result of years of investigation and litigation. Class Plaintiffs uncovered the alleged conduct among bulk vitamin producers before the federal cooperation agreements became public and before any defendants confessed to their wrongdoing. These settlements were reached after the cases between the parties were fully litigated, yet before the trials began. Therefore, these Settlements do not come too early to be suspicious nor too late to be a waste of resources. It is in fact at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation.

D. Reaction of Class to Settlement
One of the factors generally considered in determining the reasonableness of a settlement is the reaction of the class. Thomas, 139 F.3d at 231-33; In re Nat'l Student Marketing Litig., 68 F.R.D. at 155; Osher, 945 F.Supp. at 304; Stewart, 948 F.Supp. at 1087. In this case, more than 8,991 notices of this Court's preliminary approval of the Settlement were sent to class members.[6]See Sincavage Aff. at ¶ 2. No objections had been received by Class Plaintiffs or by the Court. See id. at ¶ 6. In addition, no objections were raised at the February 18, 2004 hearing on final approval of these Settlements. There were two exclusion requests, both of which came from entities who were already excluded from the class as they had previously timely requested exclusion from the Vitamin Products Class. See id. at ¶ 7. Therefore, there has been no substantive opposition to these Settlements.

*106 E. Opinion of Experienced Counsel
Counsel in this case are among the best and most experience antitrust litigators in the country. Consequently, their opinion that these Settlements are fair, adequate, and reasonable is deserving of this Court's consideration. Although the Court will not defer blindly to the views of counsel with regard to the adequacy of a settlement, it must consider that the Settlements were reached after several months of arms' length negotiation by experienced counsel and that both counsel and all parties involved view the settlements as reasonable.

III. CONCLUSION
After considering all of the above mentioned factors, the Court finds that this Settlement is adequate, fair and reasonable. Accordingly, Class Plaintiffs' Motion for Final Approval of Settlements With the Sumitomo, Tanabe, Lonza, Degussa, Nepera, and Reilly Defendants and for the Entry of Final Judgment is granted and final judgment dismissing with prejudice the Biotin and Niacin Defendants is entered. An order will accompany this Memorializing Opinion.

FINAL ORDER APPROVING SETTLEMENTS WITH THE BIOTIN AND NIACIN DEFENDANTS AND FINAL JUDGMENT
This Court having considered Plaintiffs' Motion for Final Approval of the four settlement agreements entered into as of November 1, 2002, March 6, 2003, July 10, 2003 and August 1, 2003 on behalf of plaintiffs and the Vitamin Products Class (as defined in the orders of the Court dated February 25, 2002 and September 16, 2002) by Plaintiffs' Co-Lead Counsel and counsel for Sumitomo Chemical Co., Ltd., Sumitomo Chemical America, Inc., Tanabe Seiyaku Co., Ltd., Tanabe USA, Inc., Reilly Industries, Inc., Reilly Chemicals, S.A., Lonza Inc., Lonza AG, Degussa AG, Degussa Corp., and Nepera, Inc., (jointly referred to as the "Biotin and Niacin Defendants" or "Settling Defendants") in this litigation ("Class Action") and the exhibits attached thereto (the "Settlement Agreements," copies of which are attached hereto as Exhibits 1-4); and having considered all of the submissions and arguments with respect to plaintiffs' motion; and having entered orders on February 25, 2002 and September 16, 2002 certifying the following class:
All persons or entities who directly purchased vitamins A, C, E, B1, B2, B3, B5, B6, B9, B12, H, beta carotene, astaxanthin, canthaxanthin and vitamins premixes for delivery in the United States from any of the Defendants or their co-conspirators from January 1, 1990 through September 30, 1998. Excluded from the class are all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries and affiliates;
and having directed that notice be given to members of the Vitamin Products Class of the proposed settlement and of a hearing scheduled to determine whether the proposed settlement should be approved as fair, reasonable, and adequate to the Vitamin Products Class and to hear any objections to any of these matters (the "Settlement Hearing"); and having held the Settlement Hearing and considered the submissions and arguments made in connection therewith, this Court hereby FINDS:
1. That the notice to members of the Vitamin Products Class required by Fed.R.Civ.P. 23(e), including but not limited to the forms of notice and the means of identifying and giving notice to members of the Vitamin Products Class, has been given in an adequate and sufficient manner and constitutes the best notice practicable, *107 complying in all respects with such rule and the requirements of due process.
2. That the Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement, has been advised of any objections to the settlement and has given fair consideration to any such objections.
3. That arm's length negotiations have taken place in good faith between Plaintiffs' Co-Lead Counsel and the Settling Defendants and have resulted in the proposed settlement, as provided in the Settlement Agreements.
4. That the settlements, as provided for by the Settlement Agreements, is in all respects fair, reasonable, and adequate and in the best interests of the Vitamin Products Class; that the settlement is accordingly finally APPROVED pursuant to Fed.R.Civ.P. 23(e); and that, in accordance with the terms of the Settlement Agreements, which are hereby incorporated by reference as though fully set forth herein, it is hereby ORDERED, ADJUDGED and DECREED:
(a) That all claims in the captioned action against the Settling Defendants, including Allied Feeds Inc. et al. v. Sumitomo Chemical Co., Ltd. and Tanabe Seiyaku Company, Ltd., 2:02 CV 2416 (D.N.J.), are hereby dismissed with prejudice;
(b) That the Releasees, as defined in the Settlement Agreements, shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, whether class, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including without limitation costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, which Releasors or any of them, whether directly, representatively, derivatively or in any other capacity, ever had, now have or hereafter can, shall or may have, relating in any way to any conduct prior to the date hereof concerning the purchase, sale or pricing of Vitamin Products or relating to any conduct alleged in the Class Action, including, without limitation, any such claims which have been asserted or could have been asserted in the Class Action against the Releasees or any of them except that this release shall not affect the rights of Releasors or any of them (i) to seek damages or other relief from any person with respect to any Vitamin Products purchased directly from the manufacturer (or any subsidiary or affiliate thereof) outside the United States for delivery to a destination outside the United States; or (ii) to participate in or benefit from any relief or other recovery as part of a settlement or judgment on behalf of a class of indirect purchasers of Vitamin Products;
(c) That the foregoing release shall not release any product liability or breach of contract claims unrelated to the subject matter of the Class Action;
(d) That no member of the Vitamin Products Class shall hereafter be permitted in any suit, action, or proceeding to dispute or seek to establish liability against any Releasees;
(e) That, in addition to the provisions of subparagraphs (b), (c), and (d) of this paragraph, each Vitamin Products Class Member is hereby deemed expressly to have waived and released, with respect to the Released Claims, any and all provisions, rights and benefits conferred by (a) 1542 of the California Civil Code, which reads:
A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.
*108 and (b) any similar state, federal or other law, rule or regulation or principle of common law. Each Vitamin Products Class Member may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of the Released Claims, but each Vitamin Products Class Member as a Releasor shall hereby be deemed to have waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such other or different facts;
(f) That nothing in this Order and Judgment or the Settlement Agreements and no aspect of the settlements or the negotiation thereof is or shall be deemed or construed to be an admission or concession or evidence of any violation of any statute or law or of any liability or wrongdoing by Settling Defendants or of the truth of any of the claims or allegations contained in the complaint in the Class Action or any other pleading or of the propriety of certifying a class of any indirect purchasers of Vitamin Products, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Class Action or in any other action or proceeding; and
(g) That there is no just reason for delay of entry of a final judgment of dismissal with prejudice as to the Settling Defendants, and that, pursuant to Fed.R.Civ.P. 54(b), the Clerk is therefore directed to enter this judgment, which shall be final and appealable.
5. Without affecting the finality of this Order and Judgment, the Court hereby retains jurisdiction of these settlements and the Settlement Agreements, including the administration and consummation of the settlements and the determination of issues relating to attorneys' fees and expenses and distribution to the members of the Vitamin Products Class, and further retains exclusive jurisdiction for purposes of any suit, action or proceeding arising out of or relating in any way to this Order and Judgment, the settlements, the Settlement Agreements and/or the applicability of the Settlement Agreements, and the Settling Defendants and each member of the Vitamin Products Class shall hereby be deemed to have consented to such exclusive jurisdiction of the Court for such purposes. Without limiting the generality of the foregoing, any dispute concerning the provisions of paragraphs 4(b), (c), (d) or (e) of this Order and Judgment, including but not limited to any suit, action or proceeding in which the provisions of paragraphs 4(b), (c), (d) or (e) are asserted as a defense in whole or in part to any claim or cause of action asserted by any plaintiff or otherwise raised as an objection, shall constitute a suit, action or proceeding arising out of or relating to this Order and Judgment. Solely for purposes of any such suit, action or proceeding, to the fullest extent possible under applicable law, the Settling Defendants and the members of the Vitamin Products Class are deemed to have irrevocably waived and to have agreed not to assert, whether by way of motion, as a defense or otherwise, any claim, argument or objection that they are not subject to the jurisdiction of this Court or that this Court is in any way an improper venue or an inconvenient forum.
6. Terms used in this Order and Judgment that are defined in the Settlement Agreements are, unless otherwise defined herein, used in this Order and Judgment as defined in the Settlement Agreements.
NOTES
[1] See Thomas v. Albright, 139 F.3d 227, 231-233 (D.C.Cir.), cert. denied, 525 U.S. 1016, 119 S.Ct. 539, 142 L.Ed.2d 448 (1998) and 525 U.S. 1033, 119 S.Ct. 576, 142 L.Ed.2d 480 (1998); Pigford, 185 F.R.D. at 99-101.
[2] See Thomas, 139 F.3d at 231; Pigford, 185 F.R.D. at 98.
[3] See In re National Student Marketing Litig., 68 F.R.D. 151, 155 (D.D.C.1974); Osher v. SCA Realty I, 945 F.Supp. 298, 304 (D.D.C.1996); Pray v. Lockheed Aircraft Corp., 644 F.Supp. 1289, 1290 (D.D.C.1986); see also Moore v. National Assoc. of Sec. Dealers, Inc., 762 F.2d 1093, 1106 (D.C.Cir.1985).
[4] See Thomas, 139 F.3d at 231-33; In Re Nat'l Student Marketing Litig., 68 F.R.D. at 155; Osher, 945 F.Supp. at 304; Stewart v. Rubin, 948 F.Supp. 1077, 1087 (D.D.C.1996), aff'd, 124 F.3d 1309 (D.C.Cir.1997).
[5] See Stewart, 948 F.Supp. at 1087; McGuinness v. Parnes, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989).
[6] Copies of the "Notice of Vitamin Products Settlements with Sumitomo Chemical America, Inc., Sumitomo Chemical Co., Ltd., Tanabe USA, Inc., Tanabe Seiyaku Co., Ltd., Reilly Industries, Inc., Reilly Chemicals, S.A. Lonza Group Ltd., Lonza Inc., Lonza AG, Degussa AG, Degussa Corp., Nepera Inc. and Hearing Thereon" and "Proof of Claims" were mailed on November 19, 2003 by first class mail to all potential members of the Vitamin Products Class to the extent that they could be identified from the database of customers created by the Claims Administrator. Summary notices of the proposed Settlement were also published in The Wall Street Journal on December 8 and December 14, 2003, in Feedstuffs on December 15, 2003, and in Chemical Market Reporter on December 15, 2003. The Notices alerted class members to the time and place of the Court's hearing on final approval of this Settlement and directed them to additional sources of information. See Sincavage Aff. at ¶¶ 2,4. Accordingly, the Court is satisfied that adequate notice of the Settlement and hearing have been provided.